# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-3186

_____

Brittany R. Tovar

*Plaintiff - Appellant*

v.

Essentia Health; Innovis Health, LLC, doing business as Essentia Health West;
HealthPartners, Inc.; HealthPartners Administrators, Inc.

*Defendants - Appellees*

------------------------------

Transgender Legal Defense and Education Fund; Whitman Walker Health; World
Professional Association for Transgender Health

*Amici on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 7, 2017
Filed: May 24, 2017

_____

Before BENTON, BEAM, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Brittany Tovar was employed by defendant Essentia Health or defendant Innovis Health, LLC, dba Essentia Health West (collectively, Essentia) from 2010 to 2016. One of the benefits of Tovar's employment was enrollment in an employer provided health insurance plan which also covered her teenage son. In 2014 Tovar's son was diagnosed with gender dysphoria. Tovar sought coverage for medications and surgery for her son, but her requests for coverage were denied on the basis of a categorical exclusion in the insurance plan for "[s]ervices and/or surgery for gender reassignment." Tovar then filed this lawsuit against Essentia and the plan's third party administrator for sex based discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363A.01 et seq., and the Affordable Care Act (ACA), 42 U.S.C. § 18116. The defendants moved to dismiss Tovar's claims, and the district court granted their motions. Tovar appeals. We affirm in part, reverse in part, and remand for further proceedings.

I.

Brittany Tovar is a nurse practitioner who was employed by Essentia from 2010 to 2016. Tovar's benefits as an employee of Essentia included health insurance provided through the Essentia Health Employee Medical Plan (the plan). The plan corresponded to an insurance policy offered to employers by HealthPartners, Inc. and was administered either by HealthPartners, Inc. or by its subsidiary HealthPartners Administrators, Inc. (HPAI).

In 2014 Tovar's teenage son became a beneficiary of the plan. Later that year Tovar's son was diagnosed with gender dysphoria, a condition that arises when an individual's gender identity differs from the gender assigned at birth. Health professionals decided that various treatments were necessary to treat her son's condition, including medications and gender reassignment surgery. Tovar sought coverage under the plan, but because the plan at that time categorically excluded

-2-

coverage of "[s]ervices and/or surgery for gender reassignment," the defendants declined to pay for her son's treatment. The coverage dispute caused Tovar "worry, anger, disappointment, and sleepless nights," made it "more difficult for her to focus on her work," and led her to suffer "a sharp increase in migraines." Tovar also paid herself for at least one of her son's prescribed medications although Essentia "later agreed to provide Tovar with coverage for [that medication] as a one-time exception" to its categorical bar on coverage. Tovar's son was forced to forgo another prescribed medication that the family was unable to pay for and was unable to go forward with gender reassignment surgery.

Tovar filed this lawsuit in January 2016. Her complaint charged Essentia with sex discrimination in violation of Title VII and the MHRA and charged HealthPartners, Inc. with discrimination in violation of the ACA. The defendants moved to dismiss the complaint. The district court granted the defendants' motions, concluding that Tovar's claims against Essentia failed for lack of statutory standing and that her claim against HealthPartners, Inc.[1] failed for lack of Article III standing. Tovar appeals.

II.

A.

Tovar argues that the district court erred by dismissing her claims against Essentia under Title VII and the MHRA for lack of "statutory standing." The Supreme Court has recently commented that it has observed confusion about the concept of standing and has suggested that the use of that term in conjunction with

___

[1] After judgment was entered, the district court granted a request by HealthPartners, Inc. that Tovar's complaint be amended to include HPAI as a defendant. Both HealthPartners, Inc. and HPAI are thus parties in the case before us.

anything other than the "irreducible constitutional minimum of standing" provided by Article III should be disfavored. See Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1386–87 & n.4 (2014) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). Although the term "statutory standing" may be subject to some confusion, its purpose is clear: a plaintiff who seeks relief for violation of a statute must "fall[] within the class of plaintiffs whom Congress has authorized to sue" under that statute. See id. at 1387. Determining whether this requirement is satisfied is "a straightforward question of statutory interpretation." Id. at 1388. If a court determines that Congress has not provided a statutory cause of action in a particular case, it may be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. See, e.g., Leyse v. Bank of Am. Nat'l Ass'n, 804 F.3d 316, 320 (3d Cir. 2015); Minden Pictures, Inc. v. John Wiley & Sons, Inc., 795 F.3d 997, 1001 (9th Cir. 2015).

We review a district court's dismissal of a complaint under Rule 12(b)(6) "de novo, accepting as true the factual allegations contained in the complaint and granting [the plaintiff] the benefit of all reasonable inferences that can be drawn from those allegations." Gomez v. Wells Fargo Bank, N.A., 676 F.3d 655, 660 (8th Cir. 2012). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). The requirement of facial plausibility is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

In this case the district court concluded that Tovar's complaint failed to state a claim for relief under Title VII and the MHRA because she does not fall within the class of plaintiffs these statutes protect. Specifically, Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42

U.S.C. § 2000e-2(a) (emphasis added). The court concluded that because Tovar had not alleged her employer discriminated against her on the basis of her own sex, but rather alleged discrimination against her on the basis of her son's sex, her complaint failed to state a claim for relief under Title VII. Similarly, the MHRA makes it illegal for an employer to discriminate against someone because of her sex with respect to her terms, conditions, or privileges of employment. Minn. Stat. § 363A.08, subd. 2(3). The MHRA further states that "[a]ny person aggrieved by a violation of this chapter may bring a civil action." Id. § 363A.28, subd. 1. The district court concluded that Tovar's son was the real "person aggrieved" by Essentia's actions, not Tovar. The court therefore concluded that Tovar's complaint failed to state a claim under the MHRA. Tovar contends that these determinations were in error.

We note two preliminary points before reaching the merits of Tovar's argument. First, the district court applied the same analysis to Tovar's claims under both Title VII and the MHRA. The parties have done the same in their briefing and arguments on appeal. The Minnesota Supreme Court has made clear that it "relie[s] on federal law interpreting Title VII in [its] interpretation of the MHRA," Rasmussen v. Two Harbors Fish Co., 832 N.W.2d 790, 796 (Minn. 2013), and Tovar has not argued that the statutes are substantively different with respect to the issues presented in this case, see United States v. Wearing, 837 F.3d 905, 910 n.6 (8th Cir. 2016) (per curiam) (arguments not sufficiently developed in opening brief are deemed waived). We will therefore also assume that the protections of Title VII and the MHRA are the same for purposes of this case. See Liles v. C.S. McCrossan, Inc., 851 F.3d 810, 818 (8th Cir. 2017). Second, because the district court concluded that Tovar is not within the class of plaintiffs for whom Title VII and the MHRA create causes of action, we assume for purposes of this appeal that the prohibition on sex based discrimination under Title VII and the MHRA encompasses protection for transgender individuals. See Hunter v. United Parcel Serv., Inc., 697 F.3d 697, 702 (8th Cir. 2012).

Beyond those initial points, we are left with a narrow question: does Tovar's complaint on her own behalf[2] about her employer's refusal to cover treatment for her son fall within the protections of Title VII and the MHRA? We conclude that it does not.

As the district court noted, the plain text of Title VII contravenes Tovar's argument that she is within the class of plaintiffs for whom Congress authorized that cause of action. The statute provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a) (emphasis added). In other words, the statute prohibits employers from discriminating against employees on the basis of their protected characteristics. Tovar has not alleged that she was discriminated against on the basis of her own sex; rather, she alleges that she was discriminated against because of her son's sex. By its terms the protections of Title VII do not extend to such discrimination.

This reading of the plain language of Title VII is supported by decades of case law. Even the cases cited by Tovar are largely consistent with this construction. For example, Tovar relies heavily on Newport News Shipbuilding and Dry Dock Co. v. EEOC, 462 U.S. 669 (1983), a case about pregnancy discrimination. In that case, an employer provided a health plan that covered both its employees and their spouses. Id. at 671. The plan provided different pregnancy related benefits for female employees and the female spouses of male employees, however. Id. at 672. The Supreme Court framed the question presented by the case as "whether petitioner's plan discriminates against male employees because of their sex" and ultimately concluded that it did "because the protection [the plan] affords to married male

_____

[2] Tovar's son is not a plaintiff in this lawsuit, nor has she brought a claim on his behalf.

-6-

employees is less comprehensive than the protection it affords to married female employees." Id. at 676.

As the parties point out, a central and explicit component of the reasoning in Newport News was a questionable assumption that the spouse of a man would always be a woman. 462 U.S. at 684 ("[S]ince the sex of the spouse is always the opposite of the sex of the employee, it follows inexorably that discrimination against female spouses in the provision of fringe benefits is also discrimination against male employees."). Nonetheless, the Court clearly concluded that the discrimination at issue was against the male employees themselves because of their own sex since the employer's health plan gave "married male employees a benefit package for their dependents that is less inclusive than the dependency coverage provided to married female employees." Id. This conclusion is consistent with our reading of the plain text of Title VII as requiring an employee who seeks relief under that statute to have suffered discrimination on the basis of her own protected characteristic.

The decisions from other courts of appeals on which Tovar relies also rest on the conclusion that the discrimination challenged in those cases was based on an employee's own protected characteristic, even if the significance of that characteristic was defined in relation to the characteristics of a third party. See, e.g., Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc., 173 F.3d 988, 994 (6th Cir. 1999) ("A white employee who is discharged because his child is biracial is discriminated against on the basis of his race" because "the alleged discrimination . . . was due to [the plaintiff's] race being different from his daughter's."); Parr v. Woodmen of the World Life Ins. Co., 791 F.2d 888, 892 (11th Cir. 1986) ("Where a plaintiff claims discrimination based upon an interracial marriage or association, he alleges, by definition, that he has been discriminated against because of his race."). These cases therefore provide little support for Tovar's argument that she may sue her employer under Title VII, because there is no plausible argument that Essentia's failure to cover gender reassignment treatment for Tovar's son amounted to discrimination against Tovar on the basis of her own sex.

Tovar also cites Thompson v. N. Am. Stainless, LP, 562 U.S. 170 (2011). Thompson concerned a plaintiff (Eric Thompson) and his fiancé (Miriam Regalado) who were both employed by defendant North American Stainless (NAS). Id. at 172. After Regalado filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging sex discrimination, Thompson was fired. Id. Thompson subsequently sued NAS and alleged that he had been fired "in order to retaliate against Regalado for filing her charge with the EEOC." Id. The Supreme Court concluded that (1) "if the facts alleged by Thompson are true, then NAS's firing of Thompson violated Title VII," and (2) "Thompson falls within the zone of interests protected by Title VII." Id. at 173, 178. Tovar characterizes Thompson as recognizing the right of an employee, who had not himself engaged in protected activity, to bring a claim under Title VII. She alleges Thompson supports her right to bring a claim against her employer for discrimination on the basis of her son's protected characteristics.

Thompson is distinguishable from the present case in several meaningful ways. First, Thompson involved Title VII's antiretaliation provision, not its substantive antidiscrimination provisions. In its decision the Court noted that "Title VII's antiretaliation provision must be construed to cover a broad range of employer conduct," in contrast to the narrower construction given to Title VII's substantive antidiscrimination provisions. Thompson, 562 U.S. at 173–74. The Court's conclusion in Thompson that the "broad statutory text," id. at 175, of Title VII's antiretaliation provision covered the conduct at issue in that case does not help Tovar establish that her claim under the substantive antidiscrimination provisions of Title VII is permissible in this case. Second, in Thompson both the person who had engaged in protected activity (Regalado) and the person who was fired (Thompson) were employed by NAS. Thompson therefore fails to establish that the protections of Title VII extend to an employer's discrimination against an employee's beneficiary who does not have an independent relationship with the employer. See id. at 178 ("Thompson was an employee of NAS, and the purpose of Title VII is to protect employees from their employers' unlawful actions.").

-8-

For the foregoing reasons we agree with the district court that Title VII and the MHRA do not create causes of action for Tovar under the circumstances presented by this case. We therefore affirm the district court order dismissing these claims under Rule 12(b)(6).

B.

Tovar also contends that the district court erred in dismissing her claim against HealthPartners, Inc. and HPAI for lack of Article III standing. We review dismissal of a case for lack of Article III standing de novo. See Am. Civil Liberties Union of Minn. v. Tarek ibn Ziyad Acad., 643 F.3d 1088, 1092 (8th Cir. 2011). The requirements of Article III standing are well settled: a plaintiff must show "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." Susan B. Anthony List v. Driehaus, 134 S. Ct. 2334, 2341 (2014) (internal quotation marks and alterations omitted). In this case, the district court concluded that Article III standing was lacking because Tovar had failed to show that the injuries of which she complained were traceable to or redressable by HealthPartners, Inc. and HPAI. For the following reasons, we disagree.

The primary reason the district court concluded that Tovar lacked Article III standing for her ACA claim was its determination that Tovar had sued the wrong defendant in her third count. The district court concluded that the plan document stated that HPAI was the plan's administrator, not HealthPartners, Inc., and therefore concluded that HealthPartners, Inc. had neither caused Tovar's alleged injuries nor could redress them. Tovar contends that the district court's determination that HealthPartners, Inc. was improperly named as a defendant was in error, and we agree. The parties agree that the plan document was properly considered by the district court in ruling on the defendants' motion to dismiss. See Minn. Majority v. Mansky, 708 F.3d 1051, 1056 (8th Cir. 2013). Although the plan document listed HPAI as the plan

administrator, it did not provide that HealthPartners, Inc. "has no relation to this case," as the district court concluded. The plan document stated that HPAI was "a related organization of HealthPartners, Inc.," but it did not define the exact nature of the relationship between the two companies. Perhaps more importantly, the plan document directed beneficiaries to send claims, complaints, and appeals of claim denials to HealthPartners, Inc., not to HPAI. The plan document therefore does not definitively establish that HealthPartners, Inc. was wholly uninvolved in the administration of the plan. It thus appears that, at this stage in the litigation, both HealthPartners, Inc. and HPAI are properly named as defendants.

The district court concluded in the alternative that "[e]ven if HealthPartners was involved in administering the Plan, Tovar's claims against it would still fail" for lack of Article III standing because "her alleged injury is not traceable to it or redressable by it." The district court reasoned that because the plan was self funded by Essentia (meaning that Essentia rather than the plan's administrator was responsible for the payment of claims) and the plan document reserved to Essentia "all powers and discretion necessary to administer the Plan," including the power to change its terms, Tovar's alleged injuries were not fairly traceable to or redressable by HealthPartners, Inc. or HPAI. We disagree because Tovar's complaint alleges that the plan "corresponds to an insurance policy offered to employers by HealthPartners and known by Policy No. G008HPC-03." Drawing all inferences in Tovar's favor as we must at this stage in the proceedings, the latter allegation suggests that the plan and its allegedly discriminatory terms originated with HealthPartners, Inc. and/or HPAI—not with Essentia. If HealthPartners, Inc. or HPAI provided Essentia with a discriminatory plan document, Tovar's alleged injuries could well be traceable to and redressable through damages by those defendants notwithstanding the fact that Essentia subsequently adopted the plan and maintained control over its terms.

Although the district court did not analyze the third aspect of Article III standing—whether Tovar has suffered a concrete and particularized injury in fact—in

-10-

their briefing on appeal the defendants also argue that Tovar has not been injured because she was not personally denied coverage under the plan. We reject the defendants' assertion that Tovar has not suffered an injury in fact, however, because we distinguish the question of whether Tovar suffered an injury sufficient to confer Article III standing from the question of whether Tovar is a proper plaintiff under the text of the ACA. See Lexmark Int'l, Inc., 134 S. Ct. at 1386. We conclude that Tovar has alleged an injury cognizable under Article III because she contends that the defendants' discriminatory conduct denied her the benefits of her insurance policy and forced her to pay out of pocket for some of her son's prescribed medication. The record is silent on whether Tovar has been fully reimbursed for these out of pocket payments,[3] but the record at this point is sufficient to establish an injury in fact for purposes of Article III standing. See id. ("Lexmark does not deny that Static Control's allegations of lost sales and damage to its business reputation give it standing under Article III to press its false-advertising claim, and we are satisfied that they do."); see also Geissal v. Moore Med. Corp., 524 U.S. 74, 78 n.3 (1998).

For the foregoing reasons we reverse the district court's dismissal of Tovar's ACA claim under Rule 12(b)(1) for lack of Article III standing. The defendants argue that Tovar's ACA claim could properly be dismissed on alternative grounds, including that Tovar does not "fall[] within the class of plaintiffs whom Congress has authorized to sue under" the ACA, see Lexmark Int'l Inc., 134 S. Ct. at 1387 & n.4, and that HealthPartners, Inc. and HPAI cannot be liable under that statute for administering a plan whose allegedly discriminatory terms were under the sole control of another organization. These grounds were not reached by the district court, however. While "we may affirm the district court's judgment on any basis supported by the record, we are not required to do so." Loftness Specialized Farm Equip., Inc. v. Twiestmeyer, 742 F.3d 845, 851 (8th Cir. 2014).

---

[3] For the same reason we reject the defendants' contention that Tovar's ACA claim is moot.

-11-

As we have often noted, "[w]hen it would be beneficial for the district court to consider an alternative argument in the first instance, we may remand the matter to the district court." Id.; see also Schweiss v. Chrysler Motors Corp., 922 F.2d 473, 476 (8th Cir. 1990). We conclude that such is the situation here, and we therefore remand for the district court to determine in the first instance whether Tovar's claim against HealthPartners, Inc. and HPAI should be dismissed for failure to state a claim under the ACA.

III.

Accordingly, we affirm the judgment of the district court in part and reverse in part. The case is therefore remanded for further proceedings consistent with this opinion.

BENTON, Circuit Judge, concurring in part and dissenting in part.

I concur in Part II(A) of the court's opinion.

There is no need for a remand on whether Tovar states a claim against HPAI or HealthPartners, the third-party administrator, under Section 1557, 42 U.S.C. § 18116(a). Tovar's statutory standing to sue HPAI or HealthPartners was thoroughly briefed and argued before this court. Cf. *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 851 (8th Cir. 2014) (remanding where the parties "did not comprehensively brief or argue" the alternative ground). Whether Tovar states a claim under § 1557 is "pure question of law that this Court can and should resolve without need for remand." *See Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm of Adjustment*, 558 U.S. 67, 79 (2009). *See Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 936 (8th Cir. 2012) ("Whether a complaint states a cause of action is a question of law which we review on appeal de novo.").

The parties agree that the Office for Civil Rights' regulations interpreting § 1557 deserve *Chevron* deference. *See **Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.***, 467 U.S. 837, 865-66 (1984). They also agree that OCR's explanatory commentary to its regulations deserve deference. *See **Barnhart v. Walton***, 535 U.S. 212, 221-222 (2002) ("[T]he fact that the Agency previously reached its interpretation through means less formal than 'notice and comment' rulemaking . . . does not automatically deprive that interpretation of the judicial deference otherwise its due."); ***Citizens Exposing Truth About Casinos v. Kempthorne***, 492 F.3d 460, 467 (D.C. Cir. 2007) (where publication in the Federal Register "reflects a deliberating agency's self-binding choice, as well as a declaration of policy, it is further evidence of *Chevron*-worthy interpretation").

Assuming the OCR's commentary applies,[4] it states that "third party administrators are generally not responsible for the benefit design of the self-insured plans they administer and that ERISA (and likely the contracts into which third party administrators enter with the plan sponsors) requires plans to be administered consistent with their terms." **81 Fed. Reg. 31432** (May 18, 2016). However, a TPA may be liable under § 1557 "when the alleged discrimination is in the administration of the plan"—that is, for example, where a TPA "denies a claim because the individual's last name suggests that she is of a certain national origin or threatens to

---

[4]The commentary was published May 18, 2016, with an effective date of July 18, 2016—both after Tovar's complaint was dismissed. An agency's "interpretive regulation that is substantially consistent with prior regulations or prior agency practices, and has been accepted by all Courts of Appeals to consider the issue, can be applied to cases pending at the time the regulation is promulgated." ***Brandywine Explosives & Supply v. Dir., Office of Workers' Comp. Programs***, 790 F.3d 657, 662-63 (6th Cir. 2015). *See **Clay v. Johnson***, 264 F.3d 744, 750 (7th Cir. 2001) ("A clarifying rule, therefore, can be applied to the case at hand just as a judicial determination construing a statute can be applied to the case at hand."); ***Antelope Coal Co./Rio Tinto Energy America v. Goodin***, 743 F.3d 1331, 1342 (10th Cir. 2014) (same)

expose an employee's transgender or disability status to the employee's employer." **81 Fed. Reg. 31433**. Discrimination in administration is not the only way a TPA may be liable under § 1557. The OCR will "engage in a case-by-case inquiry to evaluate whether a third party administrator is appropriately subject to Section 1557 as a recipient in situations in which the third party administrator is legally separate from an issuer that receives Federal financial assistance for its insurance plans." *Id.*

The OCR lists two "principles developed in longstanding civil rights case law" that inform the case-by-case determination whether a TPA is appropriately subject to § 1557. First, "the degree of common ownership and control between the two entities." Tovar did not allege that HPAI or HealthPartners share with Essentia any "degree of common ownership and control," nor did she make any factual allegation that supports such an inference. Although Tovar's brief makes arguments about common ownership and control, "an attempt to amend one's pleadings in an appellate brief comes too late." *See* ***Dorothy J. v. Little Rich Sch. Dist.***, 7 F.3d at 729, 734 (8th Cir. 1993).

Second, the case-by-case inquiry examines "whether the purpose of the legal separation is a subterfuge for discrimination—that is, intended to allow the entity to continue to administer discriminatory health-related insurance or other health-related coverage." **81 Fed. Reg. 31433**. Tovar neither alleged nor made any factual allegations that support an inference that HPAI or HealthPartners is a subterfuge for discrimination "intended to allow [Essentia] to continue to administer discriminatory health-related insurance." *See id.* Tovar's factual allegations include that Essentia's "plan corresponds to an insurance policy offered to employers by HealthPartners and known as Policy No. G008HPC-03." This allegation, taking all inferences in Tovar's favor, does not state a claim against HealthPartners or HPAI under § 1557. Alleging that the plan "corresponds to an insurance policy offered" by HPAI or HealthPartners does not allege anything about the administration of the plan. Nor does it state a claim against HPAI or HealthPartners under OCR's guidelines for a "case-by-case

-14-

inquiry": It does not allege "common ownership or control between the two entities" or that the purpose of HPAI's "legal separation is a subterfuge for discrimination."

The complaint's theory against HPAI or HealthPartners is that it "discriminated against Plaintiff in violation of Section 1557 . . . by serving as the third party administrator for the Essentia Health Employee Medical plan and enforcing the Plan's discriminatory exclusion of any '[s]ervices and/or surgery for gender reassignment.'" This claim alleges only "*serving* as the third party administrator," and "*enforcing* the Plan." There is no allegation that HPAI or HealthPartners: 1) discriminated in its administration of Essentia's policy, 2) shared common ownership or control with Essentia, or 3) served as a "subterfuge for discrimination . . . intended to allow [Essentia] to continue to administer discriminatory health-related insurance." The allegations in Tovar's complaint, drawing all inferences in her favor, do not allege a plausible theory of TPA liability under § 1557.

Tovar's allegations against Essentia fit the "typical" scenario where OCR will pursue only the employer: "Where, by contrast, the alleged discrimination relates to the benefit design of a self-insured plan—for example, where a plan excludes coverage for all health services related to gender transition—and where OCR has jurisdiction over a claim against an employer under Section 1557 because the employer falls under one of the categories in § 92.208, OCR will typically address the complaint against the employer." *Id.*

Because I would affirm the district court's dismissal without prejudice of Tovar's claim against HPAI or HealthPartners, I dissent in part.

_____

-15-