# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3519

_____

Todd Monroe,                                    *
                                                *
          Plaintiff – Appellee,                 *
                                                *   Appeal from the United States
          v.                                    *   District Court for the
                                                *   Eastern District of Arkansas.
Arkansas State University, Department            *
of Nursing; Susan Hanrahan, Dean of             *
College of Nursing and Health                   *
Professionals, Arkansas State                   *
University; Sue Campbell, Program               *
Director, Arkansas State University,            *
                                                *
          Defendants – Appellants.              *

_____

Submitted: May 18, 2007
Filed: July 26, 2007

_____

Before WOLLMAN, BRIGHT, and JOHN R. GIBSON, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Arkansas State University dismissed Todd Monroe from the University's nurse anesthesia program after he took a medical leave of absence and received an "incomplete" grade in his clinical course. Monroe filed suit against the University, as well as Susan Hanrahan and Sue Campbell (Dean of the College of Nursing and Program Director, respectively) in their individual capacities, alleging breach of contract and damages under 42 U.S.C. § 1983. The district court dismissed the claim

for money damages against the University on the basis of sovereign immunity, but permitted Monroe to proceed against the University for injunctive relief and against the individual defendants for damages. The University and the individual defendants, Hanrahan and Campbell, appeal.

We reverse the district court's (1) partial denial of the University's motion for summary judgment on the basis of sovereign immunity and (2) denial of Hanrahan's and Campbell's motion for summary judgment on the basis of qualified immunity and direct dismissal of the action.

Background

Monroe alleges that, in Spring 2003, he enrolled in the University's nurse anesthesia program. Shortly before completing the program, in April 2005, Monroe voluntarily took a medical leave of absence to receive treatment for chemical dependency. During this time, Monroe entered into a consent agreement with the Arkansas State Board of Nursing (BON). Under this agreement, Monroe was placed on probation for three years. After consulting Hanrahan and Campbell, he informed them of his decision to take medical leave.

Monroe claims that he then attempted without success to speak with Hanrahan and Campbell regarding how he might complete his clinical course work and receive his degree. Finally, at a meeting in September 2005, Hanrahan informed him that he had received an "I" or "incomplete" grade in his unfinished clinical program. Hanrahan also advised him that his "I" would turn into an "F" within a year and that he was dismissed from the program. Monroe states that he requested to complete his clinical course and receive his diploma, but Hanrahan told him that he could not do so until his nursing license was "unencumbered."

Monroe filed this lawsuit against the University, Campbell, and Hanrahan on March 6, 2006. He contends that these facts amount to an unconstitutional deprivation of property without due process because the University deprived him of his earning potential, anesthetist certification, and public education without a hearing or any form of due process.

The University, as well as Hanrahan and Campbell, responded to Monroe's allegations with their own version of facts. Essentially, they explain that Monroe agreed to receive an incomplete grade, knew of the "incomplete" grade via the school's electronic grade posting, and never took advantage of the University's avenues for filing a grievance. They also maintain that they did not officially dismiss Monroe until August 2006 when his "I" became an "F," in accordance with school policy that an incomplete grade will revert to an "F" if not completed within one year. The University submitted to the district court its formal letter of dismissal dated August 15, 2006, not long after it sent the letter to Monroe (and during pendency of the motions we now review). The University filed a motion to dismiss arguing that it was entitled to immunity from suit under the Eleventh Amendment. Hanrahan and Campbell likewise urged the district court to dismiss Monroe's claims against them on the basis of qualified immunity.

The court received affidavits and other supporting documentation and construed the motion to dismiss as a motion for summary judgment. See Fed. R. Civ. P. 12(b). The court concluded the Eleventh Amendment barred Monroe's suit for damages against the University, but permitted Monroe to pursue prospective injunctive relief. In addition, the court determined that Hanrahan and Campbell were not entitled to qualified immunity because "there are facts in dispute as to whether defendants denied plaintiff's right to procedural due process."

The University appeals the district court's order permitting the injunctive action to proceed, contending that it is entitled to sovereign immunity even as to prospective injunctive relief. The individuals appeal the order denying them qualified immunity.

Jurisdiction

The University properly raises the claim of its sovereign immunity on interlocutory appeal. See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 141 (1993) (district court order denying a state or a state entity Eleventh Amendment immunity from suit in federal court may be appealed under the collateral order doctrine); see also Williams v. Missouri, 973 F.2d 599, 599 (8th Cir. 1992) ("Interlocutory review of the district court's order on the Eleventh Amendment immunity issue is appropriate because '[i]mmunity from suit is effectively lost if the party claiming it is erroneously forced to stand trial.'" (quoting Barnes v. Missouri, 960 F.2d 63, 64 (8th Cir. 1992) (per curiam)). Likewise, the individual defendants properly raise the issue of their qualified immunity. See Herts v. Smith, 345 F.3d 581, 585 (8th Cir. 2003) ("The Supreme Court [ ] has carved out an exception to th[e] rule of finality for cases involving the defense of qualified immunity.") This court's review of these issues is de novo.

Discussion

1. Sovereign Immunity for Arkansas State University

The University argues the Eleventh Amendment bars suit against the University for any kind of relief, not merely monetary damages. We agree. While under the doctrine set forth in Ex Parte Young, 209 U.S. 123 (1908), state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment, the same doctrine does not extend to states or state agencies. See Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs., 443 F.3d 1005, 1017 (8th Cir. 2006), vacated on other grounds, 2007 WL 1802012 (2007)

(recognizing that only state officials, as opposed to state agencies, can be sued for prospective injunctive relief and dismissing claims against state agency); see also Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985); Alabama v. Pugh, 438 U.S. 781, 781-82 (1978). Accordingly, the district court erred by permitting Monroe to proceed against the University for injunctive relief. We remand to the district court for entry of an order dismissing the University.

## 2. Qualified Immunity for Hanrahan and Campbell

The district court denied Hanrahan's and Campbell's motion for summary judgment, rejecting their argument that they are entitled to qualified immunity. We review de novo the district court's denial of summary judgment on grounds of qualified immunity, see Sparr v. Ward, 306 F.3d 589, 593 (8th Cir. 2002), taking as true those facts asserted by Monroe that are properly supported by the record. Wilson v. Lawrence County, Mo., 260 F.3d 946, 951 (8th Cir. 2001).

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The district court must consider whether (i) Monroe has alleged the violation of a constitutional right by Hanrahan and Campbell and (ii) that right was clearly established at the time such that a reasonable person would have known that his conduct violated the law. See Wilson, 260 F.3d at 951; see also Herts v. Smith, 345 F.3d 581, 585 (8th Cir. 2003) ("The determination of whether qualified immunity [applies] is one of 'objective reasonableness.'"). Although the defendant bears the burden of proof for this affirmative defense, the plaintiff must demonstrate that the law was clearly established. Sparr, 306 F.3d at 593.

Monroe alleged that Hanrahan and Campbell violated his right to procedural due process, specifically his right to notice and a hearing. For our analysis of his

-5-

claim, we assume without deciding that Monroe's interest in pursuing his education constitutes a constitutionally protected interest. See Regents of the Univ. of Mich. v. Ewing, 474 U.S. 214, 222-23 (1985) (assuming without deciding the existence of protected property interest in pursuit of combined undergraduate/graduate degree at public university); Bd. of Curators of the Univ. of Mo. v. Horowitz, 435 U.S. 78, 84-85 (1978) (assuming without deciding the existence of protected interest in medical degree at public university).

In support of his proposition that he is entitled to notice and a hearing, Monroe compares his case to Goss v. Lopez, 419 U.S. 565 (1975). Goss dealt exclusively with public high school suspension for disciplinary reasons; Monroe, by contrast, was enrolled in a graduate program at the University and was dismissed for failing to complete his course work, an academic decision. Although we recognize that Monroe's conduct in this case might have permitted a disciplinary dismissal, it is undisputed that the University dismissed Monroe for failure to complete his course work, not his drug use. Monroe admitted his drug use to the University. Had he denied the allegations of drug use, then the University's decision to dismiss him for his alleged, but not conceded drug use, might constitute a disciplinary dismissal. Moreover, courts have considered dismissals "academic" in similar scenarios when the student's deficiencies, while arguably warranting disciplinary action, also bear on academic performance. See, e.g., Horowitz, 435 U.S. at 91 n.6 (personal hygiene and timeliness affecting academic aptitude of medical student); Richmond v. Fowlkes, 228 F.3d 854, 858 (8th Cir. 2000) (inappropriate behavior in class, tardiness, and inappropriate interaction with instructors contributing to academic deficiencies). Monroe's claim of a violation of his constitutional rights, therefore, does not fit within the contours of Goss.

The Supreme Court, however, has explained the contours of due process in the case of an academic dismissal. In Horowitz, the Court rejected the notion that a medical student dismissed from a graduate program because of poor academic performance required a full hearing. See 435 U.S. at 89-90. The Court distinguished

between the necessary "give and take" between student and administrative body required in disciplinary proceedings and academic decisions. See id. at 89-90. This court has distilled from Horowitz a notice requirement and a "careful and deliberate" standard for academic dismissals. See, e.g., Richmond v. Fowlkes, 228 F.3d 854, 857 (8th Cir. 2000). Further, the Supreme Court has also explained that judges may not override the professional judgment of faculty unless it is "such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." Ewing, 474 U.S. at 225.

Viewing the facts in the light most favorable to Monroe, where supported by the record, we conclude that he has not alleged a violation of due process. First, we note that Campbell and Hanrahan gave Monroe an "I" or "incomplete" grade when he failed to complete his course work. They could have failed Monroe immediately, which would have likewise resulted in his dismissal. Monroe has not explained to this court how he was disadvantaged by receiving an "I" or how it represented anything other than the administrators' caution and, indeed, grace.

Monroe alleges that Hanrahan and Campbell failed to notify him of his "I" grade after it was awarded. Even if Monroe first learned of his incomplete grade in September 2005, the record demonstrates that he had almost an entire year from that "notice" before his "I" would turn into an "F." Monroe again fails to point to how he was prejudiced in any way by this arguably *late* notice. Cf. Ross v. United States Postal Serv., 664 F.2d 191, 193 (8th Cir. 1981) (delay in administrative decision not in violation of due process because no prejudice shown).

The same analysis applies with respect to notice of Monroe's dismissal. Monroe received notice of his potential or actual dismissal, at the earliest, in September 2005 at a meeting with Hanrahan. Although he seems to argue he should have received notice prior to this meeting, he has failed to explain how the actual timing of the notice given has harmed him in any way. Indeed, during the litigation proceedings in the district court until August 2006, the University repeatedly

maintained that Monroe had not yet been dismissed from the program and had every opportunity to seek a waiver of academic requirements to prevent his dismissal. Monroe only received a letter of dismissal in August 2006, almost a full year after he received "notice" of his potential dismissal in September 2005.[1]

We are also not persuaded that Monroe was either entitled to or denied a hearing. In Horowitz, the Court "declin[ed] to ignore the historic judgment of educators and thereby formalize the academic dismissal process by requiring a hearing." 435 U.S. at 90. Even if Monroe were entitled to a hearing, he received one. A hearing need not be formal, but can consist of conversations and interviews. See Goss, 419 U.S. at 582 (explaining that hearings in disciplinary settings need only be an informal discussion). Monroe claims that Hanrahan and Campbell ignored his questions about how he could proceed to complete his course work. However, the record does not support this allegation. The individuals and Monroe each submitted e-mail correspondence showing Hanrahan's various responses to Monroe's inquiries and demonstrating her willingness to meet with him to discuss his options. Monroe claims that her responses are insufficient inasmuch as she pointed out that "there is not an immediate solution." But Monroe's disappointment in the outcome or potential outcome of process does not amount to a denial of it.

In this instance, Hanrahan and Campbell did not dismiss Monroe arbitrarily or rashly. Their first act was to give Monroe an "I" grade, thereby *preventing* him from being dismissed immediately. The record shows that they communicated with Monroe, his health care facility, and others about his situation. They agreed to meet with him, at least once rescheduling a meeting for Monroe's convenience, and they

---

[1]Further, in July, 2005, in e-mail correspondence between Monroe and Hanrahan, Hanrahan communicated to Monroe the problem created by the restrictions on his ability to practice in an environment with drugs for one year and his still outstanding clinical work. Given the circumstances, this e-mail may also have been sufficient to provide Monroe with notice of the University's dissatisfaction and potential dismissal.

frankly conveyed to him the intractable situation created by his leave of absence and the restrictions placed on his ability to work around the drugs to which he was addicted. They met with him in September and informed him of the situation and his actual or likely dismissal. Even during this litigation they encouraged Monroe to appeal, grieve, or seek a waiver through the University's various avenues for redress.[2] Given these facts, even in the light most favorable to Monroe, we cannot say that Hanrahan's and Campbell's actions were such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.

For the foregoing reasons, we reverse the decision of the district court and order that Monroe's action against the University and Hanrahan and Campbell be dismissed.

_____

[2]Because this appeal is limited on interlocutory review to the question of qualified immunity, we cannot revisit the district court's conclusion that Monroe has failed to exhaust his administrative remedies. We note, however, that Monroe might have received more process had he elected to take advantage of any of those opportunities available to him.