# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-2538

_____

Gloria A. Bunch

*Plaintiff - Appellant*

v.

University of Arkansas Board of Trustees

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 11, 2017
Filed: July 24, 2017

_____

Before RILEY,[1] Chief Judge, LOKEN and BENTON, Circuit Judges.

_____

RILEY, Chief Judge.

Gloria Bunch appeals the grant of summary judgment to her former employer in her lawsuit alleging discrimination and retaliation leading to wrongful termination.

_____

[1]The Honorable William Jay Riley stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 10, 2017. He has been succeeded by the Honorable Lavenski R. Smith.

We affirm the judgment of the district court.[2]  See 28 U.S.C. § 1291 (appellate jurisdiction).

## I.    BACKGROUND

### A.    Factual History

In early June 2010, Gloria Bunch, an African-American woman, was hired by the University of Arkansas for Medical Sciences as a program eligibility specialist for STRIVE (an acronym for Seeking to Reinforce My Identity and Values Everyday), a community outreach program that provides outpatient therapy for students in the Little Rock, Arkansas, school system.  All new employees are subject to a 90-day probation period.  In late August, before the end of her 90-day period, Bunch received a performance review conducted by her supervisor.  Bunch earned satisfactory remarks in all categories except the category of cooperation.  Bunch was informed her probation period would be extended until late November.  Bunch refused to sign her performance review.

Shortly after the review, Bunch met with a human resources administrator and asked to file a grievance of discrimination and retaliation because she was being harassed and taunted by her coworkers.  Bunch also met with STRIVE's director, Paula McCarther. Bunch complained to McCarther about her coworkers, supervisor, and performance review.  Bunch also told McCarther she suffered from disabilities and discussed requesting time off to attend a doctor's appointment.[3]  McCarther explained to Bunch the leave policy requires employees requesting leave to do so two weeks in advance, or, if calling in sick, to call their supervisor by 7:00 a.m. on the day of the absence.

_____

[2]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

[3]Bunch suffers from depression, fibromyalgia, an anxiety disorder, and osteoarthritis of the knee, among other medical conditions.

On August 30, 2010, Bunch emailed McCarther stating she was making her "formal request for the Reasonable Accommodation to attend medical appointments." The next morning (four minutes before 7:00 a.m.) Bunch emailed McCarther, her supervisor, and others, "to report [she was] calling in sick on [sic] today." Later that day, she emailed the same group:

> My Doctor is requesting for me to be off work for the next two weeks as a Reasonable Accommodation Request and is completing the FMLA Paperwork. I will submit the form upon his completion ASAP. Thank you in advance for your assistance.

Bunch's doctor submitted paperwork for unpaid leave under the Family and Medical Leave Act (FMLA), see 29 U.S.C. §§ 2601-2654, on September 1, 2010. According to the paperwork, Bunch needed to be out of work for two weeks due to a "flare up" in her fibromyalgia syndrome, which left her unable to work "in any capacity."

On September 2, 2010, McCarther left a voicemail for and emailed Bunch to inform her she did not qualify for FMLA leave because she had not been employed for one year and had not worked the requisite number of hours. See id. § 2611(2)(A) (defining eligibility). Bunch filed a charge with the United States Equal Employment Opportunity Commission (EEOC), alleging discrimination based on race, sex, age, and disability, and also retaliation. One week later, Bunch received a letter from McCarther notifying Bunch her employment was terminated. The letter stated Bunch began "missing work" on August 31, 2010, and "[d]ue to the needs of the department," her job would be filled.

## B. Procedural History

The EEOC issued Bunch her right-to-sue letter in September 2011. Bunch filed a pro se complaint against the University of Arkansas Board of Trustees (university) in December 2011 and moved for appointment of counsel. Her initial request for counsel was denied, and the district court explained there is no

constitutional right to counsel in a civil case. In February 2012, the district court issued an order putting Bunch on notice she was required to comply with the Federal Rules of Civil Procedure and local court rules. A short time later, an attorney who was not appointed by the district court made an appearance on Bunch's behalf. Bunch's attorney filed a motion to stay, citing inability to consult with Bunch "due to her mental status," which the district court granted. In September 2012, Bunch filed an amended complaint bringing claims under Title VII of the Civil Rights Act of 1964 (Title VII), see 42 U.S.C. §§ 2000e, et seq.; the Americans with Disabilities Act (ADA), see id. §§ 12101, et seq.; the Age Discrimination in Employment Act (ADEA), see 29 U.S.C. §§ 621-634; 42 U.S.C. §§ 1981 and 1983; Section 504 of the Rehabilitation Act of 1973, see 29 U.S.C. § 794; and the FMLA. The amended complaint also added two unrelated defendants in their "individual[] and in their official capacity." In October 2012, Bunch's attorney moved to withdraw, which the district court allowed.

Between January 2013 and March 2015, the district court successively appointed thirteen attorneys to represent Bunch. Several of the thirteen attorneys withdrew their representation for reasons unrelated to Bunch, including conflicts of interest. Bunch's final appointed attorney moved to withdraw because Bunch failed to respond to his correspondence requesting information necessary to respond to a pending motion and court orders. The district court granted the attorney's motion for leave and explained it had "previously warned Ms. Bunch that she may not qualify for the appointment of another should [current counsel] be forced to withdraw due to lack of Ms. Bunch's cooperation." Considering the "procedural history of this case," the district court did not appoint another attorney for Bunch, and she proceeded pro se.

In July 2015, the university moved for summary judgment. Finding "several grounds on which summary judgment must be granted," the district court granted summary judgment on all of Bunch's claims against the university. The district court

gave Bunch 30 days to demonstrate she had served the individually named defendants. After Bunch failed to do so, the district court dismissed the claims against the individually named defendants without prejudice.

## II. DISCUSSION

Bunch appeals the grant of summary judgment on her claims under the ADA, the ADEA, 42 U.S.C. §§ 1981 and 1983, and Title VII.[4] Emphasizing she was without counsel at the time the motion was granted, Bunch contends the district court failed to take into account her status as a pro se litigant. We review the district court's grant of summary judgment de novo, considering the evidence and making all reasonable inferences "in the light most favorable to the nonmoving party." Moody v. Vozel, 771 F.3d 1093, 1096 (8th Cir. 2014) (internal quotation marks omitted). Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### A. Pro Se Status

Bunch complains the district court failed to consider her status as a pro se litigant and "ignore[d] the fact that [she] was without counsel and HAD NOT been provided **any** opportunity for discovery through her numerous appointed attorneys." To begin, we again remind Bunch she has no constitutional right to counsel in a civil case. See Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998); see also In re Lane, 801 F.2d 1040, 1042 (8th Cir. 1986) ("The decision to appoint counsel in civil cases is committed to the discretion of the district court.").

---

[4]Bunch has not made any argument on appeal regarding the dismissal of her claims under the FMLA and Section 504 of the Rehabilitation Act. See Jenkins v. Winter, 540 F.3d 742, 751 (8th Cir. 2008) ("Claims not raised in an opening brief are deemed waived.").

The district court did not ignore Bunch's status as a pro se litigant; rather, it diligently assisted Bunch throughout her lawsuit. The district court appointed thirteen attorneys over the course of this litigation. Although the majority of the attorneys withdrew for reasons not directly related to Bunch, one attorney withdrew after Bunch failed to appear at a deposition, and another after Bunch failed to reply to his correspondence. The district court warned Bunch it would not appoint another attorney if she refused to cooperate with counsel. Bunch admits she "was clearly at odds with appointed counsel" throughout the development of her case, and we fail to see how her failures to maintain relationships with her court-appointed counsel amounted to a denial of her right to discovery.

To the extent Bunch complains the district court prejudiced her by finding facts in favor of the university, we disagree and observe—no material facts appear to be in dispute. We also point out that in her pro se response to the university's motion for summary judgment, Bunch failed to comply with the local rule requiring litigants to file a short statement of facts believed to be in genuine dispute. Bunch's status as a pro se litigant did not excuse her from following the local rules. See Bennett v. Dr Pepper/Seven Up, Inc., 295 F.3d 805, 808 (8th Cir. 2002). And, to the extent Bunch did respond to the university's statement of facts in her motion in opposition, the district court expressly considered Bunch's responses.

### B.     ADA, ADEA, and 42 U.S.C. §§ 1981, 1983

The district court correctly held sovereign immunity barred Bunch's claims under the ADA, the ADEA, and 42 U.S.C. §§ 1981 and 1983. States are immune from claims brought under these laws, unless the state has expressly waived immunity. See, e.g., Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 364 (2001); Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 91 (2000); Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989); see also Jones v. McNeese, 675 F.3d 1158, 1160 n.1 (8th Cir. 2012) ("When raised directly against a state actor, a § 1981 claim must be brought under § 1983."); Monroe v. Ark. State Univ., 495 F.3d 591, 594 (8th Cir.

2007) (holding the doctrine of <u>Ex Parte Young</u>, 209 U.S. 123 (1908), bars suits for both money damages and injunctive relief against a state university).  The Arkansas Supreme Court "has consistently held that a suit against a state university or its board of trustees is a suit against the State and is barred by the doctrine of sovereign immunity."  <u>Univ. of Ark. for Med. Scis. v. Adams</u>, 117 S.W.3d 588, 590 (Ark. 2003).

Bunch unsuccessfully attempted to amend her complaint once before by, in her words, "inadvertently list[ing]" the (now dismissed) individual defendants by "the wrong names."  Bunch suggests we review her appeal as if her complaint had been properly amended to add the "individual 'discriminators'" she says she named in a response to an interrogatory.  That, we will not do.  "[A] party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Bunch has neither.  Contrary to Bunch's assertion, the district court is not "obligated to conform the pleadings to the evidence" by assuming certain individuals have been named as defendants in her lawsuit.  Because we agree the claims under the ADA, the ADEA, and 42 U.S.C. §§ 1981 and 1983 are barred under the doctrine of sovereign immunity, we need not consider the district court's alternative holdings that these claims failed on the merits.

### C.    Title VII[5]
The district court concluded Bunch's amended complaint "fail[ed] to include enough facts to state a claim for relief based on alleged race or gender discrimination

---

[5]Title VII claims brought against a state are not barred by sovereign immunity.  <u>See</u> <u>Okruhlik v. Univ. of Ark.</u>, 255 F.3d 615, 627 (8th Cir. 2001) ("Congress . . . validly abrogated the Eleventh Amendment for claims of disparate treatment and impact on the basis of gender and race.").

that is plausible on its face."[6]  The district court found that even if Bunch had sufficiently stated race and gender discrimination claims, the university was still entitled to summary judgment because Bunch "failed to identify a similarly situated employee who was treated differently from her."  Because the district court, despite its conclusion about Bunch's complaint, proceeded to evaluate her claims assuming they were sufficiently stated, we will as well.

Without direct evidence of discrimination, Bunch must advance her claims under the McDonnell Douglas framework.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).  Under this standard, the plaintiff must first establish a prima facie case by showing she: "(1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; (3) suffered an adverse employment action; and (4) [suffered] under circumstances permitting an inference of discrimination."  Moody, 771 F.3d at 1097 (internal quotation marks omitted).  If the plaintiff satisfies the prima facie case, the burden shifts to the employer to provide a "legitimate, non-discriminatory justification for its adverse employment action."  Id.  If the employer meets this burden, the plaintiff must "prove [the employer's] justification is a mere pretext for discrimination."  Id.

Assuming Bunch can meet her low burden of establishing a prima facie case, the university has offered a legitimate, nondiscriminatory reason for terminating Bunch—her failure to come to work, and the university's need to fill her position.  Bunch argues this reason was pretext for discrimination because a similarly situated young, white, female employee was allowed to take unpaid leave during her probation period.  In an affidavit, McCarther stated the employee in question, like Bunch, was not allowed to take unpaid leave during her probation period.  In her deposition,

---

[6]In Bunch's amended complaint she conclusively alleged, without additional detail, she was "discriminated against because of her race and gender" and "[s]imilarly situated whites, males, or younger employees were not discharged under the same or similar . . . circumstances."

Bunch admitted she did not know if the employee's leave was paid or unpaid, and Bunch, before her termination, was allowed to use her allotted paid leave to attend medical appointments. Bunch has not shown she was "treated differently" than any similarly situated employee. Onyiah v. St. Cloud State Univ., 684 F.3d 711, 716 (8th Cir. 2012).

Bunch also contends the district court ignored other circumstantial evidence of discrimination. Bunch claims her job title was "falsified." Although Bunch was hired as a program eligibility specialist, on her 90-day evaluation, her job title was listed as "Social Service Rep. II," which, according to Bunch, was her supervisor's title. One of the categories under which Bunch was evaluated during her performance review was supervision, but Bunch had no supervisory duties. Her performance review subsequently was amended to remove that category, and that amended copy was given to Bunch. Bunch also claims she was coerced by a physician to perform group therapy without a license, but when she reported this instance to her supervisor, her supervisor "immediately said, 'No, that's his job. You're not to do group.'" Neither of these situations demonstrates the adverse action taken against Bunch was based on a discriminatory motive. Bunch's other "skeletal," unsupported allegations "are insufficient to create a genuine issue of fact so as to preclude granting summary judgment." Thomas v. Corwin, 483 F.3d 516, 530 (8th Cir. 2007).

Lastly, Bunch alleges her termination was retaliation for taking protected actions.[7] "To establish a prima facie case of retaliation, [Bunch] must show (1) she engaged in protected conduct, (2) she suffered a materially adverse employment act, and (3) the adverse act was causally linked to the protected conduct." Guimaraes v. SuperValu, Inc., 674 F.3d 962, 978 (8th Cir. 2012). The district court found the

---

[7]Bunch argues she engaged in protected conduct by requesting medical leave, refusing to engage in conduct at work she perceived as against policy or as illegal, inquiring about filing a grievance of discrimination, filing a charge with the EEOC, and complaining about her job title and wage disparities.

"undisputed evidence" showed Bunch's employment was terminated "approximately one week" after she was denied FMLA leave, and, taking the facts in her favor, assumed her supervisors at STRIVE were aware she had filed a charge with the EEOC. As the district court reasoned, temporal proximity alone is insufficient to demonstrate a genuine issue of material fact as to whether conduct was retaliatory. See Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) ("Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation."). The district court found "no such other evidence has been presented." We agree. Bunch's cursory reference in her appeal brief to "other indicia of retaliation found in the deposition" is not adequately presented on appeal. See Fed. R. App. P. 28(a)(8)(A).

III. CONCLUSION

We affirm.

_____