# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-1439

_____

Corrie Nelson

*Plaintiff - Appellant*

v.

USAble Mutual Insurance Company, doing business as Arkansas Blue Cross and
Blue Shield

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: January 16, 2019
Filed: March 22, 2019

_____

Before BENTON, MELLOY, and KELLY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Plaintiff Corrie Nelson appeals the district court's[1] grant of summary judgment against her 42 U.S.C. § 1981 race-discrimination claim. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I. Background

Nelson, an African-American woman, began working at Arkansas Blue Cross and Blue Shield ("ABCBS") in May 2004. She started as a Customer Service Representative, became a Claims Specialist, and now works as a Market Service Representative. As a Market Service Representative, Nelson "is responsible for coordinating and conducting all enrollment activity for new group customers." While working at ABCBS, Nelson was nominated for and participated in ABCBS's Leadership Development Initiative, a program designed to help employees develop management skills. Prior to working at ABCBS, Nelson worked as a salesperson for eleven years in retail clothing stores, including T.J. Max and Nine West. Nelson has a master's degree in management.

In March 2014, Velma Bearden, ABCBS's Customer Service Supervisor, announced that she was planning to retire in June 2014. In anticipation of the vacancy, ABCBS upgraded the Customer Service Supervisor position to Manager of Operations for the Southeast region and Pine Bluff office. The job description read:

> This position is accountable for providing the overall operation of all functions in the region. The incumbent is responsible for providing communication . . . between the Organization and its customers, providers of care and group administrators as well as working with the marketing teams to provide superior service to our existing members and produce exceptional proposal materials for prospective members. The incumbent is responsible for the functions related to purchasing,

---

[1] The Honorable James M. Moody Jr., United States District Judge for the Eastern District of Arkansas.

building management/security, supply requisitions and personnel policy matters.

The "job requirements" included: (1) A "[c]ollege degree or related experience"; (2) "Two . . . to four . . . years of experience in a supervisory or managerial capacity is desired"; (3) "Two . . . years experience in Customer/Provider Relations is preferred"; (4) "Experience is desired in the personal computer environment"; and (5) "Related experience and education may be substituted for any part of the above requirements."

Bryan Dorathy, ABCBS's regional executive for the Southeast region, was in charge of filling the position. Dorathy interviewed three employees for the position: Nelson, Melissa Watkins, and Jason Aud. Watkins and Aud are both Caucasian. Dorathy asked each applicant the same questions and scored their responses 1–5 in eleven separate categories. During the interviews, Dorathy told the candidates that he was looking for someone with retail experience because the new Manager of Operations would be responsible for developing a retail storefront concept at the Pine Bluff office where customers could come in, ask questions, and select insurance products. In their respective interviews, Watkins scored a 45 and Nelson scored a 42.5. They were the two highest scoring candidates.

Watkins had begun working at ABCBS in March 2004 as a Customer Service Representative. She eventually became a Product Specialist and then a Large Group Internal Service Representative. In October 2013, Watkins assumed the position of Regional Financial Risk Manager Trainee for the Southeast region. Prior to working at ABCBS, Watkins had worked for almost three years at Alltell Communications, a wireless service provider, as a Key Account Representative. Her responsibilities in that position included "[a]ssist[ing] customers with billing inquiries, sales, rate

changes, rate analysis, [and] equipment deliveries." Watkins has a bachelor's degree in business administration.[2]

On May 27, 2014, Dorathy selected Watkins over Nelson to be the new Manager of Operations for the Southeast region and Pine Bluff office. In his affidavits, Dorathy states that he chose Watkins because "she scored the highest during the interviews" and her "duties at Alltell" were "extremely similar" to what Dorathy "envisioned for the Pine Bluff location." On April 12, 2016, Nelson filed the present suit alleging race discrimination in violation of 42 U.S.C. § 1981 based on ABCBS's failure to promote her over Watkins. The district court granted summary judgment in favor of ABCBS. The court found that while Nelson had established a prima facie case of discrimination based on ABCBS's selection of Watkins over Nelson, ABCBS articulated a legitimate, nondiscriminatory reason for selecting Watkins, and Nelson failed to demonstrate that the reason was pretext for discrimination. Nelson timely filed this appeal.

## II. Standard of Review

"We review the district court's grant of summary judgment de novo, considering the evidence and making all reasonable inferences 'in the light most favorable to the nonmoving party.'" Bunch v. Univ. of Ark. Bd. of Trs., 863 F.3d 1062, 1066 (8th Cir. 2017) (citation omitted). "Summary judgment shall be granted

---

[2] Nelson asserts in her opening brief that Watkins has a bachelor's degree in business administration. In her reply brief, however, Nelson argues that it is only "assumed that Ms. Watkins possessed a bachelor's degree" and implies that Watkins "had not completed college." Nelson, however, did not question Watkins's education in her briefing before the district court or, as noted, in her opening brief on appeal. In addition, Nelson stated in her June 14, 2017 deposition that Watkins studied business administration at John Brown University and graduated.

'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(a)).

## III. Discussion

A plaintiff suing for race discrimination may survive a motion for summary judgment by "present[ing] admissible evidence directly indicating unlawful discrimination . . . or creat[ing] an inference of unlawful discrimination under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Macklin v. FMC Transp., Inc., 815 F.3d 425, 427 (8th Cir. 2016) (citation and internal quotation marks omitted). Nelson presented no evidence directly indicating unlawful discrimination so we analyze her claim under the McDonnell Douglas burden-shifting framework.

Under McDonnell Douglas, a plaintiff "must first establish a prima facie case of discrimination." Torgerson v. City of Rochester, 643 F.3d 1031, 1046 (8th Cir. 2011) (en banc). Here, Nelson has established a prima facie case because "(1) she is in a protected class; (2) she was qualified for [the Operations Manager] position; (3) she was denied that position; and (4) [ABCBS] filled the position with a person not in the same protected class." Id. (citation omitted).

Next, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for not hiring" the plaintiff. Id. (citation omitted). This burden is "not onerous." Id. at 1047 (citation omitted). Here, ABCBS met this burden. ABCBS's proffered legitimate, nondiscriminatory reasons for hiring Watkins over Nelson were: (1) Watkins scored higher on the interview; and (2) her retail experience at Alltell was more directly relevant to the storefront concept that ABCBS wanted to develop at the Pine Bluff office.

Finally, the burden shifts back to the plaintiff to demonstrate that the reason offered by the employer was pretext for discrimination. Id. at 1046. A plaintiff can show pretext in at least two ways: (1) "[a] plaintiff may show that the employer's explanation is 'unworthy of credence . . . because it has no basis in fact'"; or (2) "a plaintiff may show . . . 'that a [prohibited] reason more likely motivated the employer.'" Id. at 1047 (alteration in original) (quoting Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1120 (8th Cir. 2006)). Ultimately, the plaintiff must "show[] that a prohibited reason, rather than the employer's stated reason, actually motivated the employer's action." Id.

Here, Nelson has not met this burden. First, she argues that she was more qualified than Watkins for the position. Yet "a comparative analysis of [their] qualifications" gives us no "reason to disbelieve [ABCBS's] proffered reason for its employment decision." Wingate v. Gage Cty. Sch. Dist., No. 34, 528 F.3d 1074, 1079 (8th Cir. 2008) (quoting Chambers v. Metro. Prop. & Cas. Ins. Co., 351 F.3d 848, 857 (8th Cir. 2003)). Both women scored well on the interview and were well acquainted with ABCBS products. In addition, while Nelson had more years of retail experience, her experience was largely transactional, whereas Watkins's experience involved providing full customer service, which was more relevant to the retail storefront development at the Pine Bluff office. Thus, the comparison "reveals that [Nelson] was only similarly qualified," and therefore, "no inference of [race] discrimination . . . arise[s]." Id. at 1080.

Second, Nelson argues that Dorathy had pre-selected Watkins for the Manager of Operations position and reduced the minimum job requirements to ensure that Watkins qualified. Specifically, Nelson argues that, unlike other Manager of Operations positions within ABCBS, the Manager of Operations for the Southeast region and Pine Bluff office did not require a college degree or management experience. It is true that "evidence of preselection and arbitrary manipulation of job

requirements to benefit the pre-selected applicant may act to discredit the defendant's proffered explanation." Tyler v. Univ. of Ark. Bd. of Trs., 628 F.3d 980, 988 (8th Cir. 2011). However, even assuming the minimum job requirements were reduced, Nelson presents no evidence, other than her conclusory allegations, that suggests Dorathy pre-selected Watkins or had any role in the reduction. Moreover, Nelson presents no evidence that the reduced requirements failed to "accurately represent[] the responsibilities of the position." Dixon v. Pulaski Cty. Special Sch. Dist., 578 F.3d 862, 871 (8th Cir. 2009) (finding that "updating a job description to reflect the current responsibilities of the position is not itself evidence of pretext"), abrogated on other grounds by Torgerson, 643 F.3d 1031.

## IV. Conclusion

Ultimately, Nelson has not "produce[d] evidence sufficient to create a genuine issue of material fact regarding whether [ABCBS's] proffered nondiscriminatory justifications are mere pretext for intentional discrimination." Torgerson, 643 F.3d at 1046 (quoting Pope v. ESA Servs., Inc., 406 F.3d 1001, 1007 (8th Cir. 2005)). Accordingly, we affirm the judgment of the district court.

_____