# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 20-1544

———————————————

Paige Du Bois

*Plaintiff - Appellant*

v.

The Board of Regents of the University of Minnesota

*Defendant - Appellee*

————————————

Appeal from United States District Court
for the District of Minnesota

————————————

Submitted: December 17, 2020
Filed: February 16, 2021

————————————

Before GRUENDER, ERICKSON, and KOBES, Circuit Judges.

————————————

KOBES, Circuit Judge.

Paige Du Bois sued The Board of Regents of the University of Minnesota alleging retaliation and sex discrimination under Title IX. The district court[1] granted the University's motion to dismiss because Du Bois did not have an actionable claim

---

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

for retaliation under Title IX and she failed to show that she was treated differently because of her sex.  We agree and affirm.

I.

After a successful high school athletic career, Du Bois was recruited to run cross country and track and field at the University of Minnesota Duluth (UMD) by the then-head coach Joanna Warmington.  Du Bois enrolled as a student-athlete at UMD in the Fall of 2016.  In March 2018, Warmington took an unexpected leave of absence.  UMD told Du Bois and her teammates to carry on with the outdoor track and field season without a coach and did not tell the athletes the reason for Warmington's leave of absence.

Du Bois then met with the UMD athletic department to ask about Warmington's absence.  Assistant Athletic Director Karen Stromme told Du Bois that she could redshirt during the Spring 2018 track and field season to preserve her eligibility to compete when Warmington returned.[2] Du Bois decided to compete that spring and did not redshirt.

Du Bois and her teammates later learned that Warmington's leave of absence was because she was being investigated for sexual harassment.  Athletic Director Josh Berlo encouraged Du Bois and her teammates to participate in the investigation. Berlo pulled Du Bois aside and told her that if she wanted to, she could provide the

---

[2]As a NCAA student athlete, students may participate in ten semesters of college athletics, but may only compete in four academic years.  The extra permitted year of participation without competition is often called a "redshirt" year. *See* "What a 'redshirt' season really is?", NCAA, http://www.ncaa.org/governance/committees/division-ii-student-athletedo-you-know (last visited Jan. 29, 2021).  A student may redshirt by their choice or for medical reasons. *See* NCAA Legislative Services Database, Legislation, Academic Eligibility, Hardship Waiver § 14.2.5(a)–(c), https://web3.ncaa.org/lsdbi/search/bylawView?id=12155 (last visited Jan. 29, 2021).

investigator with information supporting Warmington. Du Bois did just that and encouraged her teammates to do the same.

Warmington remained on leave the entire spring season and into the summer. During the summer, Du Bois met with administrators in the UMD athletic department several times to ask about her future at UMD and Warmington's status as head coach. Du Bois also assumed many tasks that were normally performed by the head coach, including collecting jerseys from graduating students, setting up the locker room, assigning lockers and laundry duties, and ordering team apparel.

Towards the end of the summer, Du Bois suffered an injury that called into question her ability to compete in the fall cross country season. Because of her injury and the uncertainty surrounding Warmington's return, Du Bois considered redshirting, but she did not ask anyone in UMD's athletic department about whether that would be possible.

On August 20, 2018, when the women's cross country team started training camp, Athletic Director Berlo informed them that Warmington had resigned so the team would be without a coach for the foreseeable future. Assistant Athletic Director Abby Strong then told Du Bois that she would not be able to redshirt. Du Bois was confused because she had been given the opportunity to redshirt during the spring season when Warmington was on leave. Du Bois also pointed to a teammate who redshirted that season despite being medically cleared to compete. Strong reiterated that Du Bois would not be allowed to redshirt, and that redshirting was not for "someone like her." D. Ct. Dkt. 16 at 6.

Du Bois asked UMD administrators "about the possibility of being allowed to talk to other schools about joining their [athletic] program." *Id.* UMD warned her that if she wanted to visit other schools, she would need a release from UMD and she would not be allowed to use their facilities or practice with the cross country team. Du Bois was again confused because one of her teammates had been allowed

-3-

to use the facilities and practice with the team while visiting other schools during the spring season.

On August 27, 2018, Scott Keenan was named the interim head coach of the women's cross country program. Du Bois told him that because of her injury, she could not run at the first meet of the season, which was scheduled for September 6. Keenan told Du Bois she could either compete with the team for the fall season and not redshirt, or otherwise leave the team. He made clear that redshirting was not an option.

On September 4, 2018, Du Bois met with the athletic department staff and told them she had not decided if she wanted to transfer. They told her that, until she decided, she needed to clear out her locker, she would be "segregated from the team," and that she had until September 6 to decide whether she wanted to stay on the team and compete. *Id.* at 8. After the meeting, Du Bois filed a complaint with the University's Office of Equal Opportunity and Affirmative Action. She alleged that UMD retaliated against her for supporting Warmington during the sexual harassment investigation.

On September 8, 2018, Du Bois transferred to Northern Michigan University and ran for the women's cross country team. Du Bois later filed suit, claiming that UMD violated Title IX by (1) retaliating against her for supporting Warmington in the sexual harassment investigation by not allowing her to redshirt; and (2) discriminating against her on the basis of sex. The University filed a motion to dismiss for failure to state a claim, and the district court granted the University's motion. This appeal followed.

II.

We review a district court's grant of a motion to dismiss *de novo*. *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018). "We accept as true the complaint's factual allegations and grant all reasonable inferences

-4-

to the non-moving party." *Id.* (citation omitted). The complaint "must show the plaintiff is entitled to relief, by alleging sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *BNSF Ry. Co. v. Seats, Inc.*, 900 F.3d 545, 546 (8th Cir. 2018) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A.

Title IX prohibits educational institutions that receive federal funds from discriminating on the basis of sex: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Discrimination under Title IX includes sexual harassment. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281–82 (1998) (holding that a teacher's sexual harassment of a student constitutes discrimination under Title IX); *see also Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 633 (1999) (holding that student-on-student sexual harassment may be actionable under Title IX when the educational institution acts with deliberate indifference to known acts of harassment).

Unlike other anti-discrimination statutes, Title IX does not expressly provide a right of action for retaliation. But in *Jackson v. Birmingham Board of Education*, the Supreme Court found that Title IX implied a right of action for retaliation to enforce its prohibition on intentional discrimination, allowing litigants to seek monetary damages for individual violations of Title IX. 544 U.S. 167, 173 (2005). The Supreme Court reasoned that retaliation is implied within the statutory text of Title IX because it is "an intentional response to the nature of the complaint: an allegation of sex discrimination." *Id.* at 174. "[W]hen a funding recipient retaliates against a person *because* [she] complains of sex discrimination, this constitutes

intentional discrimination on the basis of sex, in violation of Title IX." *Id.* (citation omitted).

While the Court in *Jackson* held that a right of action for retaliation was implied in the statute, it did not establish the elements of that claim. We have never specifically articulated what a plaintiff must plead to establish a cause of action for retaliation under Title IX. *See Kelley v. Iowa State Univ. of Sci. and Tech.*, 311 F. Supp. 3d 1051, 1069 (S.D. Iowa 2018) (stating the elements of a Title IX retaliation claim and citing to *Clausen v. Nat'l Geographic Soc'y*, 664 F. Supp. 2d 1038, 1047–48 (D.N.D. 2009) (relying on a Title VII case for the elements of a Title IX retaliation case) *summarily aff'd* 738 F. App'x 595 (8th Cir. 2010) (per curiam) (unpublished)).

We have, however, held that "the Supreme Court's interpretation of Title VII properly informs our examination of Title IX." *See Wolfe v. Fayetteville, Ark. Sch. Dist.*, 648 F.3d 860, 866 (8th Cir. 2011) (applying Title VII jurisprudence to a Title IX discrimination claim). To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that (1) she engaged in protected conduct; (2) she suffered a materially adverse employment act; and (3) the adverse act was causally linked to the conduct. *Bunch v. Univ. of Ark. Bd. of Tr.*, 863 F.3d 1062, 1069 (8th Cir. 2017).

Other circuits approach a Title IX retaliation claim relying on Title VII jurisprudence too. The Ninth, Third, Seventh, and Fifth Circuits require that (1) the plaintiff partook in protected activity; (2) the plaintiff suffered an adverse action; and (3) a causal connection exists between the two. *See, e.g.*, *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 867 (9th Cir. 2014) ("[W]e apply to Title IX retaliation claims the familiar framework used to decide retaliation claims under Title VII.") (citation omitted); *Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 564 (3d Cir. 2017) (Title VII's familiar retaliation framework 'generally governs' Title IX retaliation claims."); *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 857 (7th Cir. 2019); *Collins v. Jackson Pub. Sch. Dist.*, 609 F. App'x 792, 795 (5th Cir. 2015) (unpublished) ("The language of the anti-retaliation provision of Title IX and that of

Title VII are similar and should be accorded similar interpretation.") (citation omitted). The Fourth Circuit requires plaintiffs to plead nearly identical elements.[3]

But other circuits also require the plaintiff to demonstrate that the defendant knew of the protected activity. *See, e.g.*, *Bose v. Bea*, 947 F.3d 983, 988–89 (6th Cir. 2020) (analogizing Title IX retaliation claims to Title VII retaliation claims and requiring plaintiffs demonstrate the educational institution's knowledge of the protected activity); *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 67 (1st Cir. 2002) (applying Title VII standards to Title XII claims and requiring allegations that the retaliator knew of the protected activity); *Papelino v. Albany Coll. of Pharm. of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011) (relying on "the context of Title VII" to establish a Title IX retaliation claim and requiring the plaintiff to show "knowledge by the defendant of the protected activity").

We need not decide which circuit's approach is best because Du Bois cannot meet the first element of a Title IX retaliation claim under any test. *Jackson* makes clear that Title IX retaliation claims must arise from a protected activity, like complaining of sex discrimination. *Jackson*, 544 U.S. at 174 ("[Retaliation] is an intentional response to the nature of the complaint: an allegation of sex discrimination."). The district court found that Du Bois had not engaged in a protected activity because she never complained of sex discrimination. Instead, she participated in UMD's investigation of Warmington for sexual harassment. That is, "[i]nstead of opposing a violation of Title IX, Du Bois was contending [at that time] that no violation of Title IX had occurred." D. Ct. Dkt. 16 at 14. And because *Jackson* held that a Title IX retaliation claim arises when a plaintiff is harmed from

---

[3]The Fourth Circuit combines the second and third element of a retaliation claim into one, requiring plaintiffs to first establish "that they engaged in a protected activity under Title IX, and second, they must allege that—as a result of their protected activity—they suffered an adverse action attributable to the defendant educational institution." *Feminist Maj. Found. v. Hurley*, 911 F.3d 674, 694 (4th Cir. 2018) (noting that "[l]ike our sister circuits, we thus apply familiar Title VII retaliation concepts to the requirements of a Title IX retaliation claim.").

complaining of sex discrimination, Du Bois did not engage in protected activity under Title IX.

Du Bois argues that this interpretation of *Jackson* is too broad. She directs us to *Ollier*, where the Ninth Circuit held that students who were in the "zone of interests" of Title IX were retaliated against when the school fired their softball coach after they complained of sex discrimination. 768 F.3d at 865–66. Similarly, Du Bois claims that she was within the "zone of interests" protected by Title IX because she was denied the ability to redshirt after supporting Warmington throughout the investigation.

*Ollier* does not control, but even if it did, it is distinguishable from this case. The student athletes in *Ollier* complained of sex discrimination due to unequal treatment and benefits, including inferior practice and competition facilities, access to equipment, recruiting, and training. *Id.* at 853. There, the plaintiffs alleged they were subject to discrimination. And after complaining of the Title IX violation, their coach was terminated. *Id.* The Ninth Circuit determined that while the school did not *directly* retaliate against the students, they were within the zone of interests Title IX meant to protect. *Id.* Du Bois does not allege that her retaliation claim arose from a discrimination complaint, but instead that she was retaliated against for *participating* in an investigation in support of a coach accused of sexual harassment.

No part of Title IX designates participation in a sexual harassment investigation on the side of the accused as protected activity. Du Bois argues that we should extend protections found in other nondiscrimination statutes and regulations. We decline to do so. Du Bois is correct that both Title VII and 34 C.F.R. § 100.7(e) contain provisions that prohibit discrimination because of participation in an investigation, but Title IX does not. Du Bois's claim is foreclosed by the Supreme Court's decisions in *Jackson* and *Alexander v. Sandoval*. *See Jackson*, 544 U.S. at 178 & n.2 ("[P]laintiffs may not assert claims under Title IX for conduct not prohibited by that statute."); *Alexander v. Sandoval*, 532 U.S. 275,

285 (2001) (holding that Title VI regulations that prohibited conduct that Title VI allowed were not enforceable via a private right of action).

B.

Du Bois also argues that UMD violated Title IX when it discriminated against her because of her sex. She alleges "UMD fail[ed] to provide the necessary funding and equipment for [the cross country and track and field team] as compared to male sports" and allowed male athletes to redshirt, but not her. D. Ct. Dkt. 1 at 21. Du Bois claims that evidence of UMD's discrimination in violation of Title IX is based in the fact that she was told redshirting was not "for someone like her," while a "majority of the members of the football team and men's hockey team redshirt during their time at UMD." *Id.* at 13.

Conclusory allegations and "threadbare recitals of the elements of a cause of action" cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. Du Bois offers no additional accusations of unequal funding or equipment between men and women's athletic teams at UMD. She also presents no allegations of how many men redshirt, or even how many men *request* to redshirt. She does not point to a single instance where an identified male, under similar circumstances, was allowed to redshirt. Even accepting as true all facts she pleads and granting all reasonable inferences in her favor, we find that she fails to plead sufficient facts to support her claim of sex discrimination in violation of Title IX.

III.

For the reasons set forth above, we affirm the district court's grant of the University's motion to dismiss.

_____