JAMES E. GRITZNER, Senior Judge
This matter comes before the Court on a Motion to Dismiss (the Motion) filed by *1055 Defendant Iowa State University of Science and Technology (ISU). Plaintiff Robinette Kelley (Kelley or Plaintiff) resists. The Court held a hearing on the Motion on April 26, 2018. Attorneys Derek Teeter and Michael Raupp were present for ISU, and attorneys Thomas Bullock and Beatriz Mate-Kodjo were present for Kelley. The matter is fully submitted and ready for disposition.
I. BACKGROUND[1]
ISU is a public state university located in Ames, Iowa, and as such, is the recipient of federal financial assistance. Kelley was employed by ISU as ISU's equal opportunity director and Title IX coordinator from February 4, 2013, to October 14, 2015. Kelley's immediate supervisor was Miles Lackey, Associate Vice President and Chief of Staff of ISU (Associate Vice President Lackey), who reported directly to then-President Steven Leath (President Leath). Kelley was ISU's first equal opportunity director, and upon her hiring, was told by Associate Vice President Lackey that he wanted her to be " 'the face' of the Equal Opportunity office on campus." Compl. ¶ 42, ECF No. 1.
In her role, Kelley managed ISU's equal opportunity and affirmative action programs. Kelley alleges, however, that contrary to United States Department of Education (DOE) guidelines on Title IX, ISU failed to provide her with "the necessary authority or support to implement her authority required by her position and by Title IX." Compl. ¶ 46. For example, Kelley alleges that ISU did not provide her with direct supervision by President Leath, did not give her authority to coordinate compliance with Title IX, did not adequately fund or staff her office, did not devote resources to ensuring equal educational opportunities for students on the basis of gender, and required her to serve in multiple additional roles, including affirmative action compliance officer, Section 504 coordinator, Americans with Disabilities Act (ADA) compliance officer, and civil rights investigator. Kelley further alleges that ISU failed to provide her with historical information regarding sexual assault and harassment complaints, denied her permission to revise the policy and practices on interim measures to protect student victims of sexual assault, and prevented her from ensuring that victims of sexual violence and harassment could rely on ISU for case-specific measures ensuring equal education opportunities.
Kelley alleges that, during her tenure as Title IX coordinator, she became increasingly concerned with ISU's compliance with Title IX, yet "began to receive pushback from other administrators regarding Title IX compliance issues." Compl. ¶¶ 53-54. According to Kelley, ISU bypassed her office by directing student Title IX complainants to the Dean of Students Office or to University Human Resources, entities she alleges had a vested interest in the outcome of the Title IX complaints. Kelley allegedly received "push-back [sic] and retaliation when she challenged ISU's compliance with Title IX and advocated for the need to take steps to comply with federal and state civil rights laws." Compl. ¶ 63. Kelley alleges that ISU administrators ignored her, discouraged her, prevented her from processing complaints, denied her request to contract with two third-party contractors to assist with Title IX investigations, and suggested that she reduce her efforts to comply with Title IX or behave in a manner that would permit ISU to avoid its obligations under Title IX.
*1056 Kelley received a performance evaluation on February 25, 2014. During the meeting, Associate Vice President Lackey told Kelley "she needed to exhibit better ways to 'collaborate' and 'show leadership.' " Compl. ¶ 71. He stated that ISU administrators from the university's legal department and human resources had become "afraid of her" because she was always wearing her "investigator hat" and she was too "litigious." Compl. ¶¶ 72-73. Associate Vice President Lackey nonetheless told Kelley "her overall performance was '99% good.' " Compl. ¶ 74.
Following the meeting, Kelley continued to make verbal and written complaints regarding Title IX compliance to Associate Vice President Lackey, President Leath, and other administrators. In July 2014, Kelley delivered to Associate Vice President Lackey a detailed compliance memo outlining her concerns regarding Title IX compliance. The compliance memo questioned ISU's protocol regarding processing of student complaints, withholding incidents from the Title IX office, and involvement of university counsel in Title IX investigations. The compliance memo also outlined several cases in which, according to Kelley, ISU had compromised her Title IX role and negatively impacted the Title IX rights of ISU students. Kelley alleges that, in response to the memo, "the university counsel, human resources, and the president's office retaliated against [her] and ramped up efforts to marginalize her authority on campus." Compl. ¶ 82. Kelley further alleges that, instead of collaborating with her to bring ISU into compliance with Title IX, "ISU administrators intimidated [her], made veiled threats, and attempted to coerce her into backing down from pursuing meaningful responses to her compliance concerns on campus," all of which interfered with her job duties. Compl. ¶ 84.
In April 2015, the DOE's Office for Civil Rights (OCR) began a Title IX compliance review of ISU. OCR enforces, among other statutes, Title IX, and provides technical assistance and guidance to recipients of federal funds so that they can take proactive efforts to comply with Title IX prior to a compliance review or lawsuit. OCR initiated the investigation after a complaint was filed with OCR by a female victim of sexual assault. Kelley alleges that ISU Counsel Paul Tanaka informed all administrators, including Kelley, not to discuss decisions made regarding the student's OCR complaint and to deny knowledge to OCR about why certain decisions were made. An OCR investigator interviewed Kelley in April 2015. Kelley informed Associate Vice President Lackey that the OCR investigator had told her she could file an OCR complaint based on Kelley's lack of independence, authority, and other Title IX compliance concerns.
In August 2015, during a sexual misconduct retreat, ISU announced that it was creating a sexual misconduct coordinator position in ISU's Student Affairs Division. Kelley alleges that, on the day of the retreat, Senior Vice President of Student Affairs Thomas Hill stated that ISU was creating the position because ISU wanted student-victims to report to the Dean of Students Office instead of Kelley.
On September 4, 2015, Kelley received her final performance evaluation. Three days prior, Kelley had received praise from a member of the ISU Board of Regents for a training she had conducted. During the meeting, Kelley brought up to Associate Vice President Lackey her August 2015 OCR complaint, which addressed her lack of independence and authority to enforce Title IX. Though Associate Vice President Lackey flagged two complaints about Kelley's performance, he told Kelley *1057 "her overall performance was '95% good.' " Compl. ¶ 106.
On October 14, 2015, five weeks and five days after the evaluation, Associate Vice President Lackey fired Kelley. During an October 27, 2015 phone call, President Leath informed Kelley that Associate Vice President Lackey had justified her termination because Kelley had refused to attend leadership training and classes, a claim that Kelley disputes. Kelley was told that Associate Vice President Lackey "wanted to take the Equal Opportunity/Title IX office in a different direction and that he did not feel [she] had the leadership skills to move the office in a new direction." Compl. ¶ 110.
On October 12, 2017, Kelley filed the instant lawsuit in the District Court of Iowa for Polk County. On November 8, 2017, ISU filed a notice of removal with this Court. ISU's removal was timely under 28 U.S.C. § 1446(b)(1), and Kelley's claims, which arise under federal law, fall within the original jurisdiction of the Court under 28 U.S.C. § 1331.
Count I of the Complaint alleges that ISU committed discrimination in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. Kelley alleges that ISU engaged in the "usurpation, removal, and watering down of [her] Title IX Coordinator job duties, independence, influence, and authority," which in turn "place[d] employees and students at risk of sex based discrimination in violation of Title IX." Compl. ¶¶ 118-19. Kelley alleges that "ISU's inaction indicates their [sic] deliberate indifference to the rights [she] advocated for on behalf of female victims of sexual assault." Compl. ¶ 122.
Count II of the Complaint alleges that ISU retaliated against Kelley in violation of Title IX. Kelley alleges that ISU maintained "policies and practices ... that functioned to deny equal education opportunities to students and employees based on gender," including denying these individuals "Title IX protections and rights." Compl. ¶¶ 135, 139. Kelley alleges that "ISU did not permit [her] to exercise her duties required under Title IX" by diverting students from her office, removing her decision-making authority, and ignoring her recommendations. Compl. ¶¶ 131, 138. Kelley alleges this resulted in "male perpetrators of sexual and domestic violence [being] given disproportionate protections in the Title IX investigation process and given more than equal benefits and opportunities in educational programs and activities while female victims were given less than equal benefits and opportunities." Compl. ¶ 145. Kelley lodged complaints about ISU's Title IX violations with an OCR investigator and ISU administrators. Kelley alleges that, as a result of these complaints and her refusal to implement non-Title IX-compliant policies, she was fired in violation of Title IX.
Count III of the Complaint alleges that ISU engaged in race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Kelley, "an African American female," alleges that "male and white colleagues were treated with more respect ... and their ideas, concerns, and suggestions were given deference because they were permitted to exercise the authority of their positions on campus." Compl. ¶¶ 148, 150. Kelley alleges that, following the 2015 OCR investigation, "male and white colleagues were given opportunities to resign from ISU with significant buyouts or severance payments, but [she] was summarily, and wrongfully, fired." Compl. ¶ 152. Kelley alleges that several of these male and white colleagues "perpetuated sex-based discrimination at ISU," while Kelley consistently reported ISU's non-compliant practices. Compl. ¶ 153.
*1058 Kelley requests that this Court enjoin ISU to provide a strategic plan for the Title IX office to review policies and procedures on sex discrimination and to participate in the revision of policies to best comply with Title IX. Kelley requests that ISU be enjoined from taking adverse action against Title IX coordinators and employees who report compliance concerns, oppose non-compliant Title IX policies, or participate in federal or state civil rights investigations. Kelley requests that this Court require ISU to draft a policy vesting Title IX coordinators with the independence required by Title IX and to undergo a historical analysis of sexual assault and harassment complaints on campus. Kelley further seeks damages, compensating her for her injuries, emotional distress, and lost wages, as well as punitive damages, interest allowed by law, attorney's fees, and such other relief as this Court deems appropriate. ISU's Motion seeks dismissal of the Complaint in its entirety.
II. DISCUSSION
A. Standards for the Motion
1. Rule 12(b)(1) Standard
Defendants move under Federal Rule of Civil Procedure 12(b)(1) to dismiss Kelley's Count I for lack of standing. Standing is a "jurisdictional prerequisite" that the Court must address before addressing merits questions. City of Clarkson Valley v. Mineta, 495 F.3d 567, 569 (8th Cir. 2007). "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of [Article III]. This is the threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). To demonstrate constitutional standing, a plaintiff must show "(1) an injury in fact that is (2) fairly traceable to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision in court." Carlsen v. GameStop, Inc., 833 F.3d 903, 908 (8th Cir. 2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ) (cleaned up).
Kelley bears the burden to establish standing for each claim she asserts. Gerlich v. Leath, 861 F.3d 697, 704 (8th Cir. 2017) ; Bernbeck v. Gale, 829 F.3d 643, 648-50 n.4 (8th Cir. 2016). "[E]ach element [required to demonstrate standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e. , with the manner and degree of evidence required at the successive stages of the litigation." Indigo LR LLC v. Advanced Ins. Brokerage of Am. Inc., 717 F.3d 630, 633 (8th Cir. 2013) (second alteration in original) (quoting Lujan, 504 U.S. at 561, 112 S.Ct. 2130 ). "[W]hen a motion to dismiss is made on standing grounds the standing inquiry must, as a prerequisite, be done in light of the factual allegations of the pleadings." City of Clarkson Valley, 495 F.3d at 570. The standing inquiry is separate from an assessment of the merits of a plaintiff's claim. Red River Freethinkers v. City of Fargo, 679 F.3d 1015, 1023 (8th Cir. 2012).
2. Rule 12(b)(6) Standard
ISU moves under Federal Rule of Civil Procedure 12(b)(6) as an alternative basis to dismiss Count I, and to dismiss Counts II and III, for failure to state a claim. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). "A claim has facial plausibility *1059 when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id."Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679, 129 S.Ct. 1937.
B. Count I: Title IX Discrimination
Count I alleges that ISU unlawfully discriminated against Kelley, as well as other ISU employees and students, in violation of Title IX. ISU moves to dismiss, asserting that Kelley lacks statutory standing to bring this claim for Title IX discrimination, and that Kelley lacks third-party standing to bring a claim for Title IX discrimination on behalf of ISU students and employees. ISU also argues that Kelley's claim is moot, because Title IX guidance that Kelley relies on has been withdrawn, and because Kelley is no longer employed at ISU. ISU argues, even if the Court finds Kelley has standing, the claim should nonetheless be dismissed for failure to state a claim.
1. Title IX Overview
Title IX provides that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX's protection extends to employees: "No person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination in employment ... under any education program or activity operated by a recipient which receives Federal financial assistance." 34 C.F.R. § 106.51(a)(1) (emphasis added); see also N. Haven Bd. of Educ. v. Bell, 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982) (upholding 34 C.F.R. § 106.51(a)(1) as a valid interpretation of 20 U.S.C. § 1681(a) ).
As the Supreme Court reiterated in Fitzgerald v. Barnstable School Committee, Title IX's only express enforcement mechanism is an administrative procedure for the withdrawal of federal funding from non-compliant institutions; however, Title IX also encompasses an implied private right of action. Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 255, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009) (citing Cannon v. Univ. of Chi., 441 U.S. 677, 717, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) ). "In a suit brought pursuant to this private right, both injunctive relief and damages are available." Id. (citing Franklin v. Gwinnett Cty. Pub. Schs., 503 U.S. 60, 76, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) ). The Supreme Court has held that Title IX's implied private right of action extends to employees suing for retaliation resulting from a complaint of sex discrimination at a federally-funded education program. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 174, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005). Though Jackson concerned a claim for Title IX retaliation, not discrimination, the Supreme Court held that Title IX "broadly" protects employees from "intentional 'discrimination' 'on the basis of sex' in violation of Title IX," id. at 173-74, 125 S.Ct. 1497 (quoting 20 U.S.C. § 1681 ), and "implies a private right of action to enforce its prohibition on intentional sex discrimination," id. at 173, 125 S.Ct. 1497 (citing Cannon, 441 U.S. at 690-93, 99 S.Ct. 1946 ).
2. Standing
Kelley argues that, on the face of her complaint, she has alleged sufficient facts to support the elements of constitutional standing-injury in fact, causation, and redressability-on Count I. ISU argues that *1060 Kelley lacks statutory standing to bring a claim for Title IX discrimination on her own behalf and lacks third-party standing to bring a claim on behalf of ISU students and employees.
ISU argues that Kelley lacks "statutory standing" because Kelley's claim does not fall within the "zone of interest" protected by Title IX. Statutory standing requires that "a plaintiff who seeks relief for violation of a statute must 'fall[ ] within the class of plaintiffs whom Congress has authorized to sue' under that statute." Tovar v. Essentia Health, 857 F.3d 771, 774 (8th Cir. 2017) (alteration in original) (quoting Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 134 S.Ct. 1377, 1387, 188 L.Ed.2d 392 (2014) ). However, the question of statutory standing is not appropriately considered in the Court's threshold inquiry of whether Kelley has Article III standing. "The Supreme Court ... has observed confusion about the concept of standing and has suggested that the use of that term in conjunction with anything other than the 'irreducible constitutional minimum of standing' provided by Article III should be disfavored." Id. (quoting Lexmark, 134 S.Ct. at 1386 ); see also Thole v. U.S. Bank, Nat'l Assoc., 873 F.3d 617, 628 (8th Cir. 2017) (distinguishing the issue of "whether the plaintiffs f[a]ll within the class of plaintiffs whom Congress has authorized ... to bring suit" from an issue resolved "on statutory grounds, not Article III grounds, such as standing or mootness"). However, "[i]f a court determines that Congress has not provided a statutory cause of action in a particular case, it may be subject to dismissal under [ Rule] 12(b)(6) for failure to state a claim." Tovar, 857 F.3d at 774. Accordingly, ISU's argument that Kelley lacks statutory standing to pursue her claim for Title IX discrimination must be addressed after the Court considers whether Kelley has Article III standing to bring the claim.
ISU argues that Kelley lacks third-party standing to bring a Title IX discrimination claim on behalf of ISU employees and students. "Ordinarily, a party 'must assert his own legal rights' and 'cannot rest his claim to relief on the legal rights ... of third parties.' " Sessions v. Morales-Santana, --- U.S. ----, 137 S.Ct. 1678, 1689, 198 L.Ed.2d 150 (2017) (alteration in original) (quoting Warth, 422 U.S. at 499, 95 S.Ct. 2197 ). However, "there may be circumstances where it is necessary to grant a third-party standing to assert the rights of another." Hughes v. City of Cedar Rapids, 840 F.3d 987, 992 (8th Cir. 2016) (alteration in original) (quoting Kowalski v. Tesmer, 543 U.S. 125, 129-30, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004) ). A party seeking third-party standing must make two showings: first, the plaintiff must have "a 'close' relationship with the person who possesses the right," Kowalski, 543 U.S. at 130, 125 S.Ct. 564 (quoting Powers v. Ohio, 499 U.S. 400, 411, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) ); and second, there must be "a 'hindrance' to the possessor's ability to protect his own interests," id. (quoting Powers, 499 U.S. at 411, 111 S.Ct. 1364 ).
Even if Kelley had a close relationship with ISU students, Kelley has not alleged that ISU students were hindered in protecting their own interests under Title IX. Kelley argues that she has the necessary information, which ISU students lack, about ISU's awareness of policies that have fostered a climate of institutionalized sex discrimination, and thus, the ISU students are not in a position to bring Title IX discrimination claims against ISU based on deliberate indifference. But, in her complaint, Kelley has not specified what information the ISU students lack and pleads no other facts suggesting aggrieved students or employees are hindered in their ability to protect their own *1061 interests. On the contrary, two Title IX lawsuits have been filed in this Court by students who have claimed that ISU failed to respond to their reports of sexual harassment in a manner compliant with Title IX. See generally Maher v. Iowa State Univ., No. 4:16-cv-00570-HCA (S.D. Iowa Feb. 13, 2018) (order granting defendant's motion for summary judgment), ECF No. 50; Niesen v. Iowa State Univ., No. 4:17-cv-00201-RAW (S.D. Iowa Nov. 3, 2017) (order granting in part and denying in part defendants' motion to dismiss), ECF No. 18.[2] Because Kelley has not alleged that ISU students or employees are hindered from protecting their own interests, Kelley lacks third-party standing to bring a claim for Title IX discrimination on behalf of those individuals. To the extent Count I asserts the Title IX rights of others, that claim must be dismissed.
A separate question is whether Kelley has standing to bring a personal claim for Title IX discrimination. As noted, Kelley must show that she suffered an injury in fact, fairly traceable to the challenged actions of ISU, and that is likely to be redressed by a favorable decision of the Court. Carlsen, 833 F.3d at 908. Kelley has alleged injuries in the form of her compromised role as Title IX coordinator and termination from ISU, which were fairly traceable to the decision-making of the ISU administration and Associate Vice President Lackey. Generally, both injunctive relief and damages are available in lawsuits brought pursuant to Title IX's private right of action, Fitzgerald, 555 U.S. at 255, 129 S.Ct. 788, and Kelley seeks both forms of relief against ISU. Kelley's Title IX discrimination claim can be redressed by a favorable decision of this Court. Kelley's allegations thus support all three elements of constitutional standing.
3. Mootness
To complete its Article III inquiry, however, the Court must also consider whether Count I is moot. "A case becomes moot-and therefore no longer a 'Case' or 'Controversy' for purposes of Article III-'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.' " Davis v. Anthony, Inc., 886 F.3d 674, 677 (8th Cir. 2018) (quoting Already, LLC v. Nike, Inc., 568 U.S. 85, 91, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013) ). "A case becomes moot if it can be said with assurance that there is no reasonable expectation that the violation will recur or if interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Doe v. Nixon, 716 F.3d 1041, 1051 (8th Cir. 2013) (citation omitted). "The 'heavy' burden of proving mootness falls on the party asserting the case has become moot." Kennedy Bldg. Assocs. v. Viacom, Inc., 375 F.3d 731, 745 (8th Cir. 2004) (quoting Cty. of L.A. v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979) ).
ISU argues that Kelley's Title IX discrimination claim is moot because Title IX guidance on which she relies-specifically, the 2011 Dear Colleague Letter and 2014 Q & A on Title IX and Sexual Violence that Kelley cites in her complaint-have been withdrawn and disavowed by the OCR. Kelley does not dispute this. Though various courts have consulted DOE guidance when determining university compliance with Title IX, see *1062 Doe 1 v. Baylor University, 240 F.Supp.3d 646, 659-60 (W.D. Tex. 2017) (collecting cases), the Court has located no case suggesting that withdrawn guidance should inform its assessment of Title IX claims.[3] Kelley argues, however, that her claim in Count I is based not on withdrawn guidance, but on ISU's failure to comply with the Title IX statute itself, and with the regulations promulgated thereunder that remain in effect. As noted, Title IX provides an implied private cause of action for sex-based discrimination to students and employees of publicly-funded education programs. Fitzgerald, 555 U.S. at 255, 129 S.Ct. 788 ; Jackson, 544 U.S. at 173-74, 125 S.Ct. 1497. To the extent that Kelley's Title IX discrimination claim in Count I is brought pursuant to Title IX's implied action, the claim is not moot.
ISU also argues that Kelley's claim for injunctive relief in Count I is moot because she is no longer an employee of ISU. "[I]t is axiomatic that a court should determine the adequacy of a remedy in law before resorting to equitable relief." Franklin, 503 U.S. at 75-76, 112 S.Ct. 1028. Though injunctive relief is available in lawsuits brought under Title IX, Fitzgerald, 555 U.S. at 255, 129 S.Ct. 788, the Eighth Circuit has held, in the context of a student's Title IX discrimination claim, "[t]hat a plaintiff lacks eligibility or is no longer a student is an adequate basis to dismiss an individual Title IX claim for injunctive relief." Grandson v. Univ. of Minn., 272 F.3d 568, 574 (8th Cir. 2001). The Grandson court held that the claim for injunctive relief was moot, deeming plaintiff's argument that she left the university for financial reasons but may one day return "wholly speculative." Id.
Kelley's status as a former employee is analogous to the former student-plaintiff in Grandson. Kelley has not alleged any ongoing affiliation with ISU since her termination on October 14, 2015. Kelley does not seek reinstatement into her prior role at ISU, nor does she even make the "wholly speculative" argument that she may one day return to ISU. See id. As explained above, Kelley lacks third-party standing to seek relief on behalf of current ISU students and employees. Kelley's requests that ISU be ordered to draft revised policies on Title IX compliance, prepare a historical analysis of harassment complaints, and be prevented from taking adverse action against her successor as Title IX coordinator, are thus moot as to Count I.
Kelley further seeks compensatory damages for her injuries, emotional distress, and lost wages, and punitive damages. Damages are available in lawsuits brought pursuant to Title IX's private right of action. Fitzgerald, 555 U.S. at 255, 129 S.Ct. 788. ISU has not challenged Kelley's request for damages on mootness grounds, beyond stating that Kelley cannot sue under withdrawn guidance-guidance which, as noted, does not form the basis for Kelley's Title IX discrimination claim. Kelley's request for damages is not moot as to Count I.
Regarding Count I, for the reasons provided, the Court finds Kelley lacks third-party standing to pursue a claim of Title *1063 IX discrimination on behalf of other ISU students and employees. Because Kelley is no longer affiliated with ISU, her requests for injunctive relief are moot. However, the allegations in Kelley's complaint support the elements of constitutional standing for her personal claim of Title IX discrimination, and her claim for damages as to that claim is not moot.
4. Dismissal Under Rule 12(b)(6)
ISU alternatively moves under Rule 12(b)(6) to dismiss Kelley's Title IX discrimination claim in Count I for failure to state a claim for relief. ISU argues that Kelley's Title IX claims are preempted by Title VII. ISU argues that, regardless, Kelley has not alleged her termination from ISU was the result of sex-based discrimination.
a. Preemption[4]
ISU argues that Kelley's Title IX claims must be dismissed because Title IX claims for employment discrimination are preempted by Title VII. Kelley argues that Title IX's broad grant of relief and Supreme Court precedents make both Titles VII and IX available to plaintiffs like Kelley.
There is a circuit split on the issue of whether Title VII preempts Title IX for claims of employment discrimination; the Eighth Circuit has not answered the question. The Fifth and Seventh Circuits have held that "Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex in federally funded educational institutions." Lakoski v. James, 66 F.3d 751, 753 (5th Cir. 1995) ; accord Waid v. Merrill Area Pub. Schs., 91 F.3d 857, 862 (7th Cir. 1996) (abrogated in part on other grounds by Fitzgerald, 555 U.S. at 251, 129 S.Ct. 788 ). At the core, these circuits hold that to permit Title IX claims for employment discrimination would allow employee-plaintiffs to bypass Title VII's remedial structure, including Title VII's administrative exhaustion requirement. See, e.g., Waid, 91 F.3d at 861-62 ("Title VII provides a comprehensive statutory scheme for protecting rights against discrimination in employment.... It is well-established that Title VII's own remedial mechanisms are the only ones available to protect the rights created by Title VII.... Therefore, Title VII preempted any of [plaintiff's] claims for equitable relief under ... Title IX."); Lakoski, 66 F.3d at 753, 755 ("Title IX's prohibition of sex discrimination ... is part of a larger federal legislative scheme designed to protect individuals from employment discrimination on the basis of sex. To focus exclusively on Title IX's remedies would ignore this larger federal scheme and the remedies provided by it, particularly those of Title VII. We are persuaded that Congress intended Title VII to exclude a damage remedy under Title IX for individuals alleging employment discrimination." (citation omitted) ). The Fifth Circuit also based its holding on the fact that Congress enacted Title IX only months after extending Title VII's *1064 reach to protect state and local government employees. Lakoski, 66 F.3d at 756.[5]
By contrast, the Third and Sixth Circuits have held that employment discrimination claims may be pursued under both Titles VII and IX. Doe v. Mercy Catholic Med. Ctr., 850 F.3d 545, 560 (3d Cir. 2017) ; Ivan v. Kent State Univ., No. 94-4090, 1996 WL 422496, at *2 n.10 (6th Cir. July 26, 1996) (per curiam) (unpublished table decision).[6] The Third Circuit arrived at its holding by deriving "four guiding principles" from the Supreme Court's employment discrimination jurisprudence. Mercy, 850 F.3d at 562. "First private-sector employees aren't 'limited to Title VII' in their search for relief from workplace discrimination." Id. (quoting Johnson v. Ry. Express Agency, Inc., 421 U.S. 454, 459, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) ). "Second it is a matter of 'policy' left for Congress's constitutional purview whether an alternative avenue of relief from employment discrimination might undesirably allow circumvention of Title VII's administration requirements," id. (quoting Bell, 456 U.S. at 535 n.26, 102 S.Ct. 1912 ), and employees have been conferred "independent administrative and judicial remedies" between Titles VII and IX, id. (quoting Johnson, 421 U.S. at 461, 95 S.Ct. 1716 ); see also id. at 564 ("Whether that person could also proceed under Title VII is of no moment, for Congress provided a 'variety of remedies, at times overlapping, to eradicate' private-sector employment discrimination." (quoting Bell, 456 U.S. at 535 n.26, 102 S.Ct. 1912 ) ). "Third the provision implying Title IX's private cause of action, 20 U.S.C. § 1681(a), encompasses employees, *1065 not just students." Id. at 562 (citing Bell, 456 U.S. at 520, 102 S.Ct. 1912 ; Cannon, 441 U.S. at 694, 99 S.Ct. 1946 ). "Fourth Title IX's implied private cause of action extends explicitly to employees of federally-funded education programs who allege sex-based retaliation claims under Title IX," id. (citing Jackson, 544 U.S. at 171, 125 S.Ct. 1497 ), and " Jackson repeatedly underscores Title IX's wide range" without specifying that such claims can only be brought in the absence of an available Title VII claim, id. (citing Jackson, 544 U.S. at 171, 173, 175, 179 & n.3, 183, 125 S.Ct. 1497 ).
Given a plain reading of the statutes, the Court agrees with the sound reasoning of the Third and Sixth Circuits. This reasoning is in line with the Supreme Court's declaration that Title VII does not provide the exclusive remedy for employment discrimination when Congress has made an alternative remedy available. Johnson, 421 U.S. at 459, 95 S.Ct. 1716 (reasoning that, although Title VII provides "a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief"). In Jackson, the Court explicitly recognized one such alternative remedy under Title IX, in holding that Title IX affords employees a private action for retaliation resulting from complaints of sex-based discrimination at a federally-funded education program. Jackson, 544 U.S. at 171, 125 S.Ct. 1497. The Jackson Court reasoned that Title IX "broadly" protects persons, including employees, from "intentional 'discrimination' 'on the basis of sex' " at such programs. Id. at 173-74, 125 S.Ct. 1497 (quoting 20 U.S.C. § 1681 ). Significantly, Jackson was decided after both the Fifth Circuit's Lakoski decision[7] and the Seventh Circuit's Waid decision.
Though the two statutes address similar conduct, Titles VII and IX contain significant differences, including that they "target different offenders, have different statutes of limitations, and provide ... different remedies." Kazar v. Slippery Rock Univ. of Pa., 679 Fed.Appx. 156, 165 (3d Cir. 2017) (unpublished) (Shwartz, J., concurring). The language of Title IX suggests broader protections than Title VII. See Jackson, 544 U.S. at 175, 125 S.Ct. 1497 ("Title IX is a broadly written general prohibition on discrimination, followed by specific, narrow exceptions to that *1066 broad prohibition. By contrast, Title VII spells out in greater detail the conduct that constitutes discrimination in violation of that statute." (citation omitted) ). However, in the universe of employment discrimination claims, Title IX remedies are available only to employees of education programs that receive federal funding. 34 C.F.R. 106.51(a)(1).
On the face of the statute, Congress plausibly intended to broaden the range of remedies available to plaintiffs employed at federally-funded education institutions. See Jackson, 544 U.S. at 181-82, 125 S.Ct. 1497 ("When Congress enacts legislation under its spending power, that legislation is 'in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions.' " (quoting Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) ) ); id. at 182, 125 S.Ct. 1497 ("Funding recipients have been on notice that they could be subjected to private suits for intentional sex discrimination under Title IX since 1979, when we decided Cannon. "); Franklin, 503 U.S. at 75, 112 S.Ct. 1028 ("Congress surely did not intend for federal moneys to be expended to support the intentional actions it sought by statute to proscribe."). Though the effect of this is to give Kelley both administrative and judicial avenues for relief, the Supreme Court has signaled that Titles VII and IX provide independent enforcement schemes. Cf. Mercy, 850 F.3d at 562 ("Dissenting [in Bell ], Justice Powell described vividly the putative inefficiencies, redundancies, and contradictions of parallel enforcement in private-sector employment under Titles VII and IX. But given Congress's use of the expansive term 'person' in § 1681(a), six Justices rejected those views, signifying they carry little, if indeed any, weight in our analysis." (citing Bell, 456 U.S. at 514-40 & n.26, 102 S.Ct. 1912 (majority opinion), 540-55 (Powell, J., dissenting) ) ). This construction of parallel enforcement provisions is consistent with Congress having similarly provided independent administrative and judicial remedies under Title VII and 42 U.S.C. § 1981 :
We recognize ... that the filing of a lawsuit might tend to deter efforts at conciliation, ... and that a suit is privately oriented and narrow, rather than broad, in application, as successful conciliation tends to be. But these are the natural effects of the choice Congress has made available to the claimant by its conferring upon him independent administrative and judicial remedies [under Title VII and § 1981 ].... Under some circumstances, the administrative route may be highly preferred over the litigatory; under others the reverse may be true.
Johnson, 421 U.S. at 461, 95 S.Ct. 1716.
Guided by the Supreme Court's employment discrimination jurisprudence to date and the Third Circuit's persuasive reasoning in Mercy, the Court concludes that Congress intended to make both Title VII and Title IX remedial avenues available to plaintiffs employed at education programs that receive federal funding. "It is thus Congress's prerogative-not [the Court's]-to alter that course." Mercy, 850 F.3d at 564. Having concluded that Title VII does not preempt Kelley's Title IX claims, the Court must next consider whether Kelley states a claim of Title IX discrimination upon which relief may be granted.
b. Elements of a Title IX Discrimination Claim
Kelley's Title IX discrimination claim alleges that ISU undermined her role as Title IX coordinator, which placed employees and students at risk of sex-based discrimination. ISU argues that this claim should be dismissed because Kelley has not alleged that ISU's decisions were motivated by Kelley's gender. ISU also argues that Kelley lacks statutory standing *1067 because, to the extent her claim in Count I is predicated on sex discrimination suffered by others, it does not fall within the zone of interest protected by Title IX.
Kelley, in resistance, argues that she, along with other ISU students and employees, suffered from an "institutionalized ... climate of sex-based discrimination." Pl.'s Resp. Br. 27, ECF No. 15. With respect to herself personally, Kelley asserts,
ISU ... diverted complaints away from her office, ignored her coordination of Title IX, her advocacy, and complaints thereby undermining enforcement of Title IX, which is sex discrimination. Undermining the Title IX coordinator is sex discrimination because it is an intentional response to the purpose of the job-to prevent and prohibit sex discrimination.
Id. at 26-27 (citations omitted). Kelley further argues that she suffered discrimination in the form of her termination from ISU.
Title IX provides that protected persons shall not "on the basis of sex ... be subjected to discrimination." 20 U.S.C. § 1681(a). The Eighth Circuit has held that, "for employment discrimination cases, 'the Title VII standards for proving discriminatory treatment should apply to claims arising under Title IX.' " Brine v. Univ. of Iowa, 90 F.3d 271, 276 (8th Cir. 1996) (quoting Lipsett v. Univ. of P.R., 864 F.2d 881, 896 (1st Cir. 1988) ); see also Kazar, 679 Fed.Appx. at 163 (reasoning that "[t]he standard for proving Title IX and VII gender discrimination claims is the same," and evaluating the plaintiff's "Title IX claim under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)"). "Per the language of Title IX ... 'acts of discrimination' must be 'on the basis of sex.' " Wolfe v. Fayetteville, Ark. Sch. Dist., 648 F.3d 860, 864 (8th Cir. 2011). "[D]discrimination is 'on the basis of sex,' " when the "underlying intent, and therefore motivation, on the part of the actor [is] to discriminate because of one's sex or gender." Id. at 865 ; see also Gentry v. Mountain Home Sch. Dist., No. 3:17-CV-3008, 2017 WL 5972889, at *3 (W.D. Ark. Dec. 1, 2017) (finding plaintiff's Title IX discrimination claim plausible where plaintiff alleged "the Defendant and their actors named herein sought to discriminate against [plaintiff] by singling him out for exclusion from school due to his gender" (internal quotation marks omitted) ).
Kelley alleges in Count I that ISU bypassed her office, undermined her authority as Title IX coordinator, and fired her. However, Kelley has not alleged that these actions were in any way motivated by her sex or gender. Conclusory allegations of differential treatment are not sufficient to plausibly state a claim of sex-based discrimination. See Wolfe, 648 F.3d at 865.
To the extent Kelley's Title IX discrimination claim relies on gender discrimination suffered by other students and employees, she lacks statutory standing. Determining whether a plaintiff " 'fall[s] within the class of plaintiffs whom Congress has authorized to sue' under that statute" is "a straightforward question of statutory interpretation." Tovar, 857 F.3d at 774 (quoting Lexmark, 134 S.Ct. at 1387-88 ). In Tovar, the Eighth Circuit held, in an analogous Title VII case, that an employee's protections against sex discrimination did not extend to alleged discrimination against the employee because of her son's sex, and thus, the employee lacked statutory standing. Id. at 775. The court reasoned that Title VII forbids discrimination against an employee "because of such individual's race, color, religion, sex, or national origin." Id. (quoting 42 U.S.C. § 2000e-2(a) ). Although Title IX, by contrast, provides that protected persons *1068 shall not be subjected to discrimination "on the basis of sex," 20 U.S.C. § 1681(a), as previously noted, the Eighth Circuit applies Title VII standards for proving discriminatory treatment to Title IX claims like Kelley's, Brine, 90 F.3d at 276. Accordingly, "to fall within Title IX's 'zone of interest,' a plaintiff's claim [for Title IX discrimination] must allege discriminatory acts based on his/her sex. " Moe v. Univ. of N.D., No. CIV A2-98-123, 1999 WL 33283358, at *2 (D.N.D. May 7, 1999) (emphasis added). Kelley cannot maintain a claim for Title IX discrimination based on alleged gender discrimination suffered by other ISU students and employees.[8]
Kelley has failed to state a plausible claim to relief in Count I, and therefore, her Title IX discrimination claim must be dismissed.[9]
C. Count II: Title IX Retaliation Claim
Kelley alleges in Count II that ISU unlawfully retaliated against her in violation of Title IX by firing her after she complained to ISU administrators and an OCR investigator that ISU maintained policies contrary to Title IX. Kelley alleges that ISU's policies denied equal education opportunities to female students and employees and denied female victims of sexual violence and harassment the same investigative rights as their male colleagues in Title IX investigations. ISU argues that this claim should be dismissed because Kelley, in acting as Title IX coordinator, did not engage in protected activity.[10] Kelley counters that her activity was protected because her conduct as Title IX coordinator did not fall within that role as construed by ISU. Kelley also argues that the question of whether she engaged in protected activity should not be considered at the motion to dismiss stage.
As has been established, "[r]etaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination *1069 encompassed by Title IX's private cause of action." Jackson, 544 U.S. at 173, 125 S.Ct. 1497. "To plead a prima facie case of retaliation, the plaintiff must allege that (1) [she] engaged in a protected activity; (2) the federally-funded recipient took an adverse action against [her]; and (3) the adverse action was causally linked to the protected activity." Clausen v. Nat'l Geographic Soc'y, 664 F.Supp.2d 1038, 1047-48 (D.N.D. 2009), aff'd, 378 Fed.Appx. 595 (8th Cir. 2010) (unpublished per curiam).
ISU argues that the Court should apply what some courts refer to as the "manager rule" to bar Kelley's Title IX retaliation claim. Under the manager rule, "in order to state a retaliation claim, complaints made within the scope of an employee's job cannot constitute protected conduct." Atkinson v. Lafayette Coll., 653 F.Supp.2d 581, 596 (E.D. Pa. 2009) (citing Garcetti v. Ceballos, 547 U.S. 410, 421-24, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) ); see also Skare v. Extendicare Health Servs., Inc., 515 F.3d 836, 841 (8th Cir. 2008) (applying manager rule in suit brought under state whistleblower statute by a nurse whose duties included ensuring legal compliance and reporting unlawful behavior); EEOC v. HBE Corp., 135 F.3d 543, 554 (8th Cir. 1998) (applying manager rule in Title VII retaliation suit brought by an employment manager and personnel director whose duties included implementing company policy). "A requirement of 'stepping outside' a normal role is satisfied by a showing that the employee took some action against a discriminatory policy." HBE Corp., 135 F.3d at 554 (quoting McKenzie v. Renberg's, Inc., 94 F.3d 1478, 1486-87 (10th Cir. 1996) ).
In HBE Corp., the Eighth Circuit held that a human resources manager stepped outside his role, and thus engaged in protected activity for purposes of a Title VII retaliation claim, when he refused to obey what he reasonably perceived to be a racially discriminatory directive to terminate an employee. Id. Conversely, in Skare, the court granted summary judgment for the employer, holding that a nursing home director did not engage in protected conduct under a state whistleblower statute, as "the nature of [plaintiff's] internal complaints was to carry out her regular job duties as opposed to exposing wrongdoing." Skare, 515 F.3d at 841. The court reasoned that Skare's job duties required her "to expose unlawful behavior internally ... [and] to report compliance problems at her facilities." Id.
Similarly, in Atkinson, the district court held on summary judgment that an athletic director pursuing a Title IX retaliation claim "never stepped outside of her role as Athletic Director to put the College on reasonable notice of potential legal action relating to any Title IX issues." Atkinson, 653 F.Supp.2d at 599. The court reasoned that Atkinson, whose job description included assessing gender equality under Title IX and reviewing Title IX violations, "never suggested that the College opposed her Title IX efforts. As such, her advocacy was not adverse to the College's interests, but rather was precisely what the College expected of her in order for it to avoid Title IX compliance issues." Id. Moreover, Atkinson testified that the college administration supported her efforts, that the college president encouraged her to address disparities between male and female athletics, and that the college's own self-study report to the NCAA recognized many of the shortcomings Atkinson had identified. Id. at 600.
The Court agrees-and Kelley does appear to contest-that the manager rule extends to Title IX retaliation claims. As the Atkinson court noted, numerous courts dealing with retaliation claims under the Fair Labor Standards Act (FLSA), Title VII, and other statutes, "all of which apply *1070 the same prima facie case elements as Title IX-have held that in order to engage in statutorily protected activity the employee must step outside his or her role of representing the company.' " Id. at 598 (citation and internal quotation marks omitted). The Fifth Circuit similarly explained, in the context of an analogous FLSA claim,
If we did not require an employee to "step outside the role" or otherwise make clear to the employer that the employee was taking a position adverse to the employer, nearly every activity in the normal course of a manager's job would potentially be protected activity .... An otherwise typical at-will employment relationship could quickly degrade into a litigation minefield, with whole groups of employees-management employees, human resources employees, and legal employees, to name a few-being difficult to discharge without fear of a lawsuit.
Hagan v. Echostar Satellite, L.L.C., 529 F.3d 617, 628 (5th Cir. 2008). Parallel reasoning has motivated the Eighth Circuit's application of the manager rule to claims brought pursuant to state whistleblower statutes, Skare, 515 F.3d at 841, and to Title VII retaliation claims, HBE Corp., 135 F.3d at 554 ; see also Brine, 90 F.3d at 276 ("[F]or employment discrimination cases, 'the Title VII standards for proving discriminatory treatment should apply to claims arising under Title IX.' " (quoting Lipsett, 864 F.2d at 896 ) ).
Under the facts of this case and at this stage of the proceedings, however, the Court must conclude that the manger rule does not support dismissal of Kelley's Title IX retaliation claim. Kelley alleges that ISU maintained "policies and practices ... that functioned to deny equal education opportunities to students and employees based on gender," including denying these individuals "Title IX protections and rights." Compl. ¶¶ 135, 139. Kelley alleges that, by circumventing her authority as Title IX coordinator, "male perpetrators of sexual and domestic violence were given disproportionate protections in the Title IX investigation process and given more than equal benefits and opportunities in educational programs and activities while female victims were given less than equal benefits and opportunities." Compl. ¶ 145. Kelley alleges that, unlike plaintiffs in Skare and Atkinson, ISU did not support her efforts as ISU's Title IX compliance officer. For example, Kelley alleges that administrators diverted students from her office and ignored her recommendations. Kelley alleges that, as a result, she complained to an OCR investigator and ISU administrators about ISU's failure to comply with Title IX.[11]
ISU argues that flagging Title IX concerns was what Kelley was expected to do as Title IX coordinator-and in making these complaints, Kelley did no more than her job, so her claim is barred under the manager rule. But Kelley's allegations frame the nature of her role as Title IX coordinator differently. According to Kelley, *1071 ISU directed that she remain silent during the OCR investigation and implement policies that would have rendered ISU non-compliant with Title IX. Kelley alleges, similar to the plaintiff in HBE Corp., that she refused to obey ISU directives that would have stifled Kelley from complaining to the OCR investigator and ISU administrators about "institutionalized sex based discrimination" against "female victims of violence." Compl. ¶¶ 84, 143-44. Kelley's alleged refusal to obey these directives suggests that she stepped outside her employment role-as that role was narrowly construed by ISU-and engaged in protected activity under Title IX.[12]
Kelley has also plausibly alleged that ISU took adverse action against her, and that this adverse action was causally linked to Kelley's protected activity. Clausen, 664 F.Supp.2d at 1047-48. Kelley alleges she suffered an adverse action-being fired by Associate Vice President Lackey. Kelley alleges this was the result of her OCR complaint, her complaints to ISU administrators, and her refusal to implement ISU's non-Title IX-compliant policies. Kelley has sufficiently pleaded a claim for retaliation in violation of Title IX. See Iqbal, 556 U.S. at 678, 129 S.Ct. 1937. Therefore, with respect to Count II, ISU's Motion must be denied.
D. Count III: Title VII Race and Gender Discrimination Claim
Kelley alleges in Count III that ISU unlawfully discriminated against her on the basis of her race and gender in violation of Title VII. ISU argues that this claim should be dismissed because Kelley's allegations are conclusory and amount to no more than speculation.[13]
Title VII makes it "an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Absent evidence of direct discrimination, to establish a prima facie case of discrimination under Title VII, plaintiffs must prove: "(1) membership in a protected group; (2) qualification for the job in *1072 question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination." Hager v. Ark. Dep't of Health, 735 F.3d 1009, 1014 (8th Cir. 2013) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ). A plaintiff "may 'satisfy the fourth part of the prima facie case in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class.' " Burton v. Ark. Sec'y of State, 737 F.3d 1219, 1229 (8th Cir. 2013) (quoting Pye v. Nu Aire, Inc., 641 F.3d 1011, 1019 (8th Cir. 2011) ). "Allegations based on mere speculation are insufficient." Wilson v. City of Des Moines, 338 F.Supp.2d 1008, 1025 (S.D. Iowa 2004).
Kelley is an African American woman, and thus is a member of a protected group. See 42 U.S.C. § 2000e-2(a)(1) (providing that "race" and "sex" are protected characteristics under Title VII). Kelley has alleged she was qualified to perform the job of Title IX coordinator, including, inter alia , her allegations that she "received praise from a member of the Board of Regents for a training she conducted just prior to her termination" and that her overall performance was deemed "95% good" by Associate Vice President Lackey just over five weeks prior to her termination. Compl. ¶¶ 103-04, 106, 108. Kelley has further alleged adverse employment actions in the form of her termination and lost benefits.
Kelley alleges that, as an African American woman, she was "summarily, and wrongfully, fired" whereas "male and white colleagues were given opportunities to resign from ISU with significant buyouts or severance payments," and as a result of this disparate treatment, Kelley suffered lost earnings, benefits, and professional embarrassment. Compl. ¶¶ 152, 154. At the motion to dismiss stage, although the Court accepts the factual allegations in the Complaint as true, it does not accept "legal conclusions or '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.' " Barton v. Taber, 820 F.3d 958, 964 (8th Cir. 2016) (alteration in original) (quoting Iqbal, 556 U.S. at 678, 129 S.Ct. 1937 ). Kelley's conclusory allegation of disparate treatment is insufficient to permit an inference of discrimination. See Hager, 735 F.3d at 1015 (holding that to support an inference of discrimination based on disparate treatment, plaintiffs must allege that "similarly situated employees" were treated more favorably (citing Coleman v. Md. Ct. App., 626 F.3d 187, 190-91 (4th Cir. 2010) ) ). Kelley's complaint vaguely refers to "male and white colleagues in ISU's Administration" without alleging any facts suggesting those colleagues were similarly situated. Compl. ¶ 151. Kelley alleges she served as Title IX coordinator, equal opportunity director, affirmative action compliance officer, Section 504 coordinator, ADA compliance officer, and civil rights investigator. The nonspecific term "colleagues" encompasses a broad spectrum of administrative personnel at ISU, but fails to identify any who were similarly situated-particularly in light of the constellation of roles that Kelly held at ISU. Thus, Kelley's allegation that she was treated disparately from white and male colleagues does not give rise to a circumstantial inference of discrimination. Because Kelley has not plausibly alleged facts supporting the fourth element of a prima facie claim of unlawful race and gender discrimination under Title VII, Count III must be dismissed.
III. CONCLUSION
Based on the foregoing, the Defendant's Motion to Dismiss, ECF No. 7, must be granted in part and denied in part . The Motion is granted with respect to Plaintiff's Count I (discrimination in violation of *1073 Title IX) and Count III (race and gender discrimination in violation of Title VII). These claims are thus dismissed . Defendant's Motion is denied with respect to Plaintiff's Count II (retaliation in violation of Title IX).
IT IS SO ORDERED.

On consideration of the Motion, this Court assumes the facts alleged in the Complaint to be true and draws all inferences in favor of the nonmoving party. See Cockram v. Genesco, Inc., 680 F.3d 1046, 1056 (8th Cir. 2012).

"[W]hen addressing a motion to dismiss, [the Court] may take judicial notice of filings of public record and the fact (but not the veracity) of parties' assertions therein." Graham v. Catamaran Health Sols., LLC, No. 16-1161, 2017 WL 3613328, at *2 (8th Cir. Aug. 23, 2017) (citing Roe v. Nebraska, 861 F.3d 785, 788 (8th Cir. 2017) ).

In determining whether there is a private cause of action under Title IX, the Court takes no position on whether DOE guidelines that remain in effect should be accorded any weight. See Roe v. St. Louis Univ., 746 F.3d 874, 883-84 (8th Cir. 2014) ("[T]he Supreme Court has cautioned that 'alleged failure to comply with the [Title IX] regulations' does not establish actual notice and deliberate indifference and it has never held that 'the implied private right of action under Title IX allows recovery in damages for violation of [such] administrative requirements.' " (second and third alterations in original) (quoting Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 291-92, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998) ) ).

The Court notes that at least one court has drawn a distinction between "preemption," where a federal law supersedes a state law, and "displacement," which involves the interplay between federal statutory schemes. See, e.g., Kazar v. Slippery Rock Univ. of Pa., 679 Fed.Appx. 156, 163 n.5 (3d Cir. 2017) (unpublished) (Shwartz, J., concurring) ("While ... courts have used the word 'preempt' to describe the relationship between Title IX and VII, use of that word may cause confusion. The word 'preemption' is used when evaluating whether a federal law supersedes a state law under the Supremacy Clause. Here, the question involves the relationship between two federal laws and whether they may coexist or if one law displaces the other." (citation omitted) ). Despite the sensibility of this distinction, the Court nonetheless adopts the language used by the parties, and thus uses the term "preemption."

Three district courts in the Eighth Circuit have joined the Fifth and Seventh Circuits in concluding that Title VII preempts Title IX in providing a private cause of action for victims of employment discrimination. See Sterling Capone v. Univ. of Ark., No. 5:15-CV-5219, 2016 WL 3455385, at *4 (W.D. Ark. June 20, 2016) (relying on the reasoning of Lakoski, and particularly the notion that permitting employees to sue under Title IX would "provide a bypass to Title VII's administrative procedures") (quoting Lakoski, 66 F.3d at 758 ); Vandiver v. Little Rock Sch. Dist., No. 4:03-CV-00834 GTE, 2007 WL 2973463, at *15 (E.D. Ark. Oct. 9, 2007) ("The Court is not persuaded that 'Congress intended that Title IX offer a bypass of the remedial process of Title VII.' Furthermore ... Jackson should not be read to expand private rights of action under Title IX to include claims of employment discrimination which have no connection to the rights of students.") (quoting Lakoski, 66 F.3d at 754 ) ); Cooper v. Gustavus Adolphus Coll., 957 F.Supp. 191, 193 (D. Minn. 1997) (finding that, "since Title VII provides a comprehensive and carefully balanced remedial mechanism for redressing employment discrimination, and since Title IX does not clearly imply a private cause of action for damages for employment discrimination, none should be created by the courts"). As the following discussion explains, the district courts' reliance on Lakoski is misguided, given that Lakoski pre-dated Jackson and given that Congress intended for Title VII and Title IX to function as independent remedies. Additionally, the Vandiver court's understanding of Jackson does not appropriately account for the expansiveness of the Jackson Court's holding, which acknowledged Title IX as "broadly" protecting persons, including employees, from "intentional 'discrimination' 'on the basis of sex.' " Jackson, 544 U.S. at 173-74, 125 S.Ct. 1497.

The First, Fourth, and Tenth Circuits, though not explicitly holding that Title VII does not preempt Title IX claims for employment discrimination, have similarly recognized these private Title IX claims. Hiatt v. Colo. Seminary, 858 F.3d 1307, 1315 (10th Cir. 2017) ; Preston v. Va. ex rel. New River Cmty. Coll., 31 F.3d 203, 206-07 (4th Cir. 1994) ; Lipsett v. Univ. of P.R., 864 F.2d 881, 896-97 (1st Cir. 1988). The Second Circuit discussed the circuit split in Summa v. Hofstra University, 708 F.3d 115 (2d Cir. 2013), but declined to resolve the issue of whether Title IX encompasses a private right of action for employment discrimination, as all of the relief sought by the employee-plaintiff in that case was cognizable under Title VII, id. at 131-32 & n.1.

Part of the Fifth Circuit's rationale for denying relief under Title IX for employment discrimination claims was the limited nature of the Supreme Court's holdings on that point.
Both Cannon and Franklin involved claims of prospective or current students at federally funded educational institutions; neither involved a claim of employment discrimination by an employee of those schools. Bell addressed Title IX's prohibition of employment discrimination in a challenge to the validity of administrative regulations terminating federal funding of educational institutions that discriminated on the basis of sex in their employment practices. Bell was not a claim by an individual for money damages for discrimination.
Lakoski, 66 F.3d at 754 ; see also id. at 757 ("[I]n enacting Title IX, Congress chose two remedies for the same right, not two rights addressing the same problem. Title VII provided individuals with administrative and judicial redress for employment discrimination, while Title IX empowered federal agencies that provided funds to educational institutions to terminate that funding upon the finding of employment discrimination."). Jackson, which was decided ten years after Lakoski, affirmed the viability of an employee's private right of action under Title IX. Jackson, 544 U.S. at 184, 125 S.Ct. 1497. Subsequent to Jackson, the Supreme Court decided Fitzgerald, which discussed remedies available under Title IX's private right of action without distinguishing between claims brought by students or by employees. See Fitzgerald, 555 U.S. at 255, 129 S.Ct. 788 ("In a suit brought pursuant to this private right, both injunctive relief and damages are available." (citing Franklin, 503 U.S. at 76, 112 S.Ct. 1028 ) ).

In Jackson, the Supreme Court rejected the notion that a plaintiff-coach could not bring suit as an "indirect victi[m] of sex discrimination," and based its holding, in part, on the absence of the "such individual" limitation from the Title IX statute. Jackson, 544 U.S. at 179, 125 S.Ct. 1497 (alteration in original). But Jackson concerned a claim for retaliation , not discrimination, under Title IX, and only highlighted the absence of the "such individual" limitation from Title IX's statutory language so as to explain why Title IX's implied cause of action encompasses retaliation claims. See id. ("The statute is broadly worded; it does not require that the victim of the retaliation must also be the victim of the discrimination that is the subject of the original complaint.... Where the retaliation occurs because the complainant speaks out about sex discrimination, the [statute's] 'on the basis of sex' requirement is satisfied.") (emphasis added) ).

It should be noted that Kelley's Title VII race and gender discrimination claim in Count III alleges that Kelley was subjected to adverse employment decisions and lost severance benefits, to which her "male and white colleagues" were not subjected. Compl. ¶ 152. However, neither in her complaint nor in resistance to this Motion does Kelley attach the allegations forming the basis of her Title VII discrimination claim to her Title IX discrimination claim. Regardless, as is explained below, Kelley's Count III claim does not plausibly state a claim for gender discrimination under Title VII. To the extent that Kelley relies on the allegations that form the basis of her Title VII claim of intentional employment discrimination to support her Title IX discrimination claim, they are unavailing. See Brine, 90 F.3d at 276.

ISU also argues that Count II should be dismissed because Title IX retaliation claims are preempted by Title VII. As explained above, Title VII does not preempt independent remedies under Title IX-including, with respect to Count II, Title IX claims for retaliation.

ISU argues that Kelley does not state a plausible claim for retaliation because she has not alleged that she made complaints on behalf of particular students. ISU misconstrues Jackson, which held that Title IX "broadly" prohibits retaliation against an employee who "has complained about sex discrimination." Jackson, 544 U.S. at 173-74, 125 S.Ct. 1497 ; see also id. at 175, 125 S.Ct. 1497 (" 'Discrimination' is a term that covers a wide range of intentional unequal treatment; by using such a broad term, Congress gave the statute a broad reach."). Jackson imposed no requirement that a complaint of sex discrimination be particularized to specific students. Regardless, Kelley has identified female victims of sexual assault as a specific group of individuals who were given "less than equal benefits and opportunities" in Title IX investigations at ISU. Compl. ¶ 145.

ISU argues that the import of this Court's holding that Kelley has alleged she engaged in protected activity will make Title IX coordinators "[t]sars ... subject to no institutional control (or even difference of opinion) without giving rise to a Title IX retaliation claim." Def.'s MTD Br. 17, ECF No. 7-1. However, as has been noted, Kelley's complaint construes her employment role differently than does ISU. Kelley alleges that ISU conditioned her continued employment on remaining silent during the 2015 OCR investigation and on permitting policies that resulted in institutionalized sex discrimination. Kelley does not allege that ISU simply disagreed with her about Title IX compliance, but instead, that ISU designed her job such that she would be only " 'the face' of equal opportunity on campus," while prohibiting her from bringing Title IX compliance concerns to light. Compl. ¶¶ 55, 140-44. For purposes of the Motion, the Court assumes the facts alleged in Kelley's complaint to be true. Cockram, 680 F.3d at 1056.

In the introductory paragraph to its motion to dismiss brief, ISU remarks that Kelley manufactured Title IX claims to "avoid the administrative requirements of Title VII." Def.'s MTD Br. 1, ECF No. 7-1. However, ISU does not raise the issue of administrative requirements in regard to Kelley's Title VII claim (Count III). ISU also argues that, to the extent Kelley's Title VII claim is predicated on alleged protected activity, the claim fails because Kelley's activity fell within the scope of her employment. However, neither the Complaint nor Kelley's resistance to the Motion asserts that Count III includes a claim for Title VII retaliation. Accordingly, the Court considers Kelley's Title VII claim exclusively as a claim for race and gender discrimination under Title VII.